443 A.2d 799

**Debra KLEIN, a Minor by her Parents and Natural Guardians, Richard Klein and Rochelle Klein, Appellants,**

v.

**Ralph J. CISSONE and Barbara Cissone, Individually and Trading as Pickwick Nursery School.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed Feb. 5, 1982.

Reargument Denied April 16, 1982.

John J. Tinaglia, Philadelphia, for appellants.

John J. Hart, Sellersville, for appellees.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

HESTER, Judge:

Presently before the court is appellants' appeal from the order of the lower court dated February 20, 1980 wherein the court made its previously issued rule absolute.[1]

We affirm.

The critical issues before us are: (1) Did the parties herein affect a compromise settlement of a minor's claim or merely an executory accord; and (2) Assuming the parties effectuated a compromise settlement, may same be revoked or set aside under the facts presented in the case at bar?

The genesis of this case dates back to July 28, 1968 when then four-year old appellant minor, Debra Klein, was allegedly thrown from appellees' nursery school van. In December, 1969, appellants filed suit.[2]

1. The Order in its entirety provides: "AND NOW, to-wit, this 20th day of February, A.D. 1980, the Rule is made Absolute and the plaintiffs are ordered to execute releases and accept the sum of $6,000.00 in full and final settlement of all claims. We order the docket in this matter marked 'Settled, Discontinued and Ended' pursuant to the agreement to settle approved by this Court on March 10, 1976."

2. Contained in said complaint was the following statement of damages:

By reason of the aforesaid, the minor plaintiff, Debra Klein, sustained severe physical injuries, particularly in that she suffered contusions and abrasions about her body, laceration of the hip, lacerations and contusions of the face area, in particular the mouth and lip area, and in addition, the minor plaintiff sustained severe shock and a concussion, and multiple contusions, lacerations, abrasions and *avulsion of five teeth with premature loss of upper deciduous incisor teeth, causing a resulting abnormal tongue thrust,* with possible severe malocclusion, with potential impairment and possible prevention of a normal growth and development of the maxilia, including the succedaneous incisors.

The minor plaintiff has sustained large and ugly scarring of her lip, which is disfiguring and which is permanent and *subject the minor plaintiff to severe mental distress.* The plaintiffs aver upon information and belief that cosmetic surgery will be needed to correct or repair the scarring.

*And, further, the minor plaintiff sustained severe shock to her nervous system, suffered from anxiety and general nervousness,* all of which have caused her great pain and suffering with the accompanying inconvenience which has prevented her from attending to her usual duties and some of which have continued and it is believed will

Prior to trial, a pretrial conference was held before Judge Robert M. Mountenay on October 14, 1975. The court's signed report 'of that pretrial conference noted that the injuries sustained by the minor appellant were "mouth injuries, front middle teeth knocked out. Orthodontia may be required with respect to permanent teeth. Minor appellant was five years old at the time of injury and is presently 12 years old." (R.3a). The special damages noted were "past medicals $384.68. Future 'orthodontic work estimated at about $3,000.00."

A jury trial was convened on March 10, 1976 before Judge Mountenay (now deceased). On that date, the only witness who testified was Dr. Edward Cherkas, an orthodontist, who testified that he examined the minor appellant following the accident in 1968, a few more times that year, and on March 9, 1976 (the day before the trial). Dr. Cherkas confirmed the fact that as a result of the July 28, 1968 accident, minor appellant lost five "baby teeth". Thereafter, the doctor identified two conditions from which minor appellant was suffering, to-wit: "tongue thrust" and "teeth protrusions". However, the doctor was unable, with *a reasonable degree of medical certainty*, to attribute either of those two problems to the July 28, 1968 accident. As a result of the doctor's equivocations, the court sustained appellees' objections to the further testimony of Dr. Cherkas with regard to the issue of causation. Faced with this legal dilemma, appellants' then counsel requested a short recess, during which the alleged or purported compromise settlement between the parties was reached. When court resumed and the jury returned, the trial court explained to the jury that a settlement had been reached. Procedurally, appellees then moved for a mistrial which was granted.

After the jury was excused, the court proceeded to hold a hearing on the proposed compromised settlement.

THE COURT: Now we're going into a proceeding to approve a minor's compromise and in the first place, we're

continue in the future for an indefinite time and some of which are permanent in nature. (Emphasis added)

certainly going to incorporate into the record what we already have in the record by reason of the trial.

With that opening, the court on the record set forth appellants' theory of liability as well as an itemization of incurred medical expenses and an estimate of further cosmetic and orthodontal expenses.

Thereafter, appellant Rochelle Klein, mother of minor appellant, was sworn and testified as follows:

You heard me recite certain facts since the mistrial was declared and also heard Mr. Foy (appellants' counsel) recite certain facts since the mistrial has been declared and are you in agreement with those facts as correct?

THE WITNESS: Yes.

THE COURT: Now it's my understanding that the defendant is offering $6,000.00 for a full settlement of all claims and is that your understanding as well?

THE WITNESS: Yes. . . .

THE COURT: Now I believe that it was your lawyer's recommendation that in view of the probable difficulties which arose not only out of the liability aspect of the case, but also out of the damages aspect of the case as evidenced by Dr. Cherkas' testimony, that you would be well advised to settle for $6,000.00; is that correct?

THE WITNESS: Yes.

THE COURT: Now the question is not whether you like the settlement for $6,000.00 or whether you think it's enough, but in view of the difficulties which have occurred, *are you willing to settle for $6,000.00?*

THE WITNESS: *Reluctantly.*

THE COURT: It doesn't make any difference whether you are reluctant or not. My advice is that you're getting more than you deserve, but that's all right and not knowing what the jury would award, I do know that your lawyer has gone over the evidence with you and the law with respect to liability and let me tell you that if this was tried without a jury as some cases are tried, you wouldn't get $6,000.00 out of me.

Now on the basis of that, you must understand however, *that this would be a full, final and complete settlement and despite any difficulties which might arise in the future, although I understand none are anticipated that you don't know about already, there would be no further recovery from the defendant; do you understand that?*

THE WITNESS: *Yes.* (Emphasis added) (R.96a)

Then, while still on the record, appellants' counsel represented to the court that he spoke with Richard Klein (the minor appellant's father who was at that time hospitalized) and that he (Richard Klein) joined in the agreement to settle the case for $6,000.00. This fact was confirmed by Rochelle Klein.

Thereafter, the court stated:

THE COURT: All right, for the record, *I will approve the minor's compromise on that basis,* but would appreciate Mr. Foy, if you would prepare a written order that I can sign. (Emphasis added).

Following the above detailed hearing, appellants refused to execute the prepared general release form pursuant to the terms of the compromise settlement. On April 29, 1976, appellees filed a Petition for Rule to Show Cause why appellants should not execute the appropriate general release form of all claims and accept the sum of $6,000.00 in full settlement of appellants' claim. On May 21, 1976, appellants (by newly retained counsel) filed an answer to the petition alleging *inter alia* that the preparation of minor appellant's claim by prior counsel was "wilfully inadequate to protect the interests of the minor (appellant)". In addition thereto, appellants alleged that "because of facts concerning the minor (appellant's) medical condition discovered *subsequent to the settlement,* appellants refused to consent to the settlement." Finally, appellants allege that the settlement hearing did not comply with the requirements of Pa.R.C.P. 2039 and, therefore, was not binding on the appellant.

Depositions were then taken of Mr. Foy (appellants' prior counsel), appellant Richard Klein and Dr. Edward Cherkas.

Argument was held before the court en banc on January 29, 1978 and on February 20, 1980, the lower court entered the order from which the instant appeal has been taken.

At the outset, it must be pointed out that in *all* actions involving a minor, the best interests of that child are of paramount and controlling importance to this court. The minor litigant's interest must be protected above all other conflicting interests. In order to effectuate this deeply engrained fundamental concept, Pa.R.C.P. 2039 was promulgated. It provides in relevant part:

Rule 2039. Compromise, Settlement, Discontinuance and Distribution

(a) No action to which a minor is a party shall be compromised, settled or discontinued except *after approval by the court pursuant to a petition* presented by the guardian of the minor. (Emphasis added)

Adopted Feb. 14, 1939, effective Sept. 4, 1939; amended and effective May 17, 1950; amended and effective Sept. 25, 1956; amended and effective April 2, 1962; amended and effective July 22, 1970; amended and effective June 23, 1975.

First, appellants contend that the purported March 10, 1976 settlement is void and unenforceable for the reason that it failed to comply with the directives or requirements of Pa.R.C.P. 2039(a) set forth above. Appellants contend that the settlement was legally defective for the reason that no *written petition* was submitted to the court to compromise the minor's claim. Appellants argue that this requirement is founded in public policy; that it affords the guardians of the minor as well as the court, necessary time for the careful, reasoned and measured considerations necessary to determine whether the proposed settlement is in fact in the minor's best interest.

We have reviewed all cases referred to by appellants as well as undertaking our own independent research to determine whether a *written petition* is a non-waivable condition precedent to a Pa.R.C.P. 2039(a) compromise settlement. We conclude that it is not.

A petition should include all relevant facts and the reasons why the guardian of the minor believes that a settlement is desirable and in the minor's best interest to discontinue, compromise, or settle the action. In the case at bar, the trial court had before it all relevant facts of record, as well as the reasons why it was in the best interests of the minor to settle. In passing upon the petition, the court was guided by the primary objective of protecting the interests of the minor as far as possible. Judicial discretion is necessary in each instance for it is obviously impossible to provide any detailed rule or regulation which would by necessity produce just results in all cases (See Goodrich Amram 2nd § 2039(a): Vol. 6, page 193). As the lower court points out, the purpose of the rule is to make the court aware of and in a position to properly evaluate a minor's settlement. We agree with the lower court that the word "petition" contained in Pa.R.C.P. 2039 is intended to mean an application to the court, requesting an exercise of judicial discretion. Thus, a petition may be *written or oral* and still satisfy the dictates of Pa.R.C.P. 2039. Specifically, in this case, the "petition" which was presented to the court of record, and which incorporated prior relevant trial testimony fully satisfied Pa.R.C.P. 2039(a).

There are recorded cases where a court will approve a settlement, even though trivial in comparison with a minor's injuries, when it is apparent to that court that the liability issue may never be proven and where a trial therefore would not result in a substantial recovery (Citations omitted), as in the case at bar. In discharging its duty of protecting a minor's interests, the court must concern itself with the concrete issues of "causation" and "proof", which is precisely what the court did in the instant case.

■ Alternately, appellants contend that the parties entered into an executory accord and not a final and binding agreement at the March 10, 1976 settlement proceeding. We disagree. The record does not support appellant's contention; rather, it becomes clear that what was intended at the March 10, 1976 hearing was a complete, final and enforceable agreement to settle a minor's claim.

THE COURT: Now it is my understanding that the (appellee) is offering $6,000.00 for a full settlement of all claims and is that your understanding as well?

Answer: Yes. (Rochelle Klein) (R.94a).

THE COURT: ... are you willing to settle for $6,000.00?

Answer: Reluctantly.

THE COURT: Now on the basis of that, you must understand, however, that this would be a full, final and complete settlement and despite any difficulties which might arise in the future, although I understand that none are anticipated that you don't know about already, there would be no further recovery from the (appellees); do you understand that?

THE WITNESS: Yes. (R.96a).

THE COURT: All right, for the record, I will prove the minor's compromise on that basis, but would appreciate Mr. Foy, if you would prepare a written order that I can sign. (R.97a)

An executory accord is something which is yet to be performed or, put another way, something which remains to be carried into operation in the future. There is no ambiguity or confusion as to what the parties intended at the compromise settlement proceeding. The parties clearly intended same to be final and binding—and we will not upset that intent. The fact that appellants may have changed their minds and decided not to execute release forms in conformity with the settlement agreement reached on the record on March 10, 1976, does not discharge appellants from being bound by the specifics of the March 10, 1976 settlement.

Appellants also contend that the lower court evaluated the compromise of the minor's claim without having been presented with the necessary facts as to the extent and duration of her injuries. That contention is not supported by the record. There is absolutely nothing in the record to indicate that either parent informed counsel prior to March

10, 1976 that the minor appellant needed or was receiving any sort of psychologic or psychiatric therapy or counseling. In fact, in the deposition of appellant Richard Klein, this fact is brought home clearly at pages 22–23 when he acknowledges that specific psychologic testing was done *after* the March 10, 1976 compromise settlement proceeding. Paranthetically, it strikes this court as most unusual that nearly eight years elapsed between the accident and the March 10, 1976 partial trial and compromise settlement proceeding during which the minor appellant was never tested nor treated for an emotional or psychological disorders although her parents now contend that they suspected same.

As the court in *Bollinger v. Randall*, 184 Pa.Super. 644, 135 A.2d 802 at 805–6 (1957) so aptly states:

Appellant also relies upon the rule of law that mutual mistake as to a material fact is ground for the rescission of a contract, the theory being that the settlement was nothing more than a contract even though it was approved by the court. . . . . Underestimating damages or making a settlement before the damages are accurately ascertained is not considered such a mutual mistake of fact as to relieve from a release of damages or a settlement made by the parties.

Order affirmed.