**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-3893 & 12-4419
_____

A. P., A MINOR, BY AND THROUGH RASHEENA PHINISEE,
PARENT AND NATURAL GUARDIAN;
RASHEENA PHINISEE, IN HER OWN RIGHT,
Appellants

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-10-cv-01253)
Magistrate Judge:  Honorable Jacob P. Hart[*]

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 13, 2014
_____

Before:  CHAGARES, SHWARTZ, and GARTH, <u>Circuit Judges</u>.

(Filed: February 21, 2014)

_____

OPINION
_____

_____

[*] All parties consented to the exercise of jurisdiction by Magistrate Judge Hart pursuant
to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

CHAGARES, Circuit Judge.

Rasheena Phinisee, on her own and on behalf of her minor daughter A. P. (together, the "plaintiffs"), appeal the Magistrate Judge's orders granting the Government's motion to enforce settlement and approving a petition to compromise minor's action and allocate settlement funds, as well as the Magistrate Judge's orders denying reconsideration of those orders. For the reasons that follow, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. The plaintiffs filed a medical malpractice suit against the United States under the Federal Tort Claims Act ("FTCA") on March 22, 2010. The plaintiffs allege that A. P. developed biliary atresia, a disorder that causes liver failure, as a result of A. P.'s ingestion through breast milk of Macrobid, a medication prescribed for Phinisee at a federally-funded health care clinic on May 15, 2008. With the parties' consent, the case was referred to United States Magistrate Judge Jacob P. Hart (the "Magistrate Judge") and scheduled for an April 30, 2012 bench trial. On April 11, 2012, the Magistrate Judge granted the Government's motion to bifurcate the trial as to liability and damages. The Government also moved for summary judgment, on the grounds that the plaintiffs could not establish the causal element of their negligence claim.

While the Government's summary judgment motion was pending, on April 19, 2012, the parties[1] attended a settlement conference conducted by Magistrate Judge

---

[1] Phinisee attended the conference with her attorneys Derek Layser and Gilbert Spencer. The Government was represented by Assistant United States Attorneys.

Thomas J. Rueter. After almost a day of negotiations, Magistrate Judge Rueter informed the plaintiffs' counsel that the Government had offered to settle the case for $1.2 million. With Phinisee's authorization, her counsel accepted the offer. All parties were aware that the settlement was subject to final approval by the Assistant Attorney General for the Civil Division. See 28 U.S.C. § 2677; 28 C.F.R. §§ 0.160(a)(2), 0.168.

The day after the conference, Phinisee informed Spencer by telephone that she had decided to retract her acceptance because she had discovered that the settlement proceeds, which were to be placed in a special needs trust for the benefit of A. P., were subject to a lien held by the Pennsylvania Department of Public Welfare ("DPW") for past medical expenses paid through Medicaid in the gross amount of $703,491.25. Appendix ("App.") 480, 488.[2] Phinisee reiterated her opposition to the settlement in follow-up emails to Spencer on April 23, 24, and 25, 2012. On April 26, 2012, one week after the settlement conference, the Government emailed the written settlement agreement to Layser and Spencer. Also on April 26, Phinisee faxed to Judge Rueter a pro se "Motion to Reopen Civil Action." Phinisee discharged her counsel the next day.

On May 15, 2012, the Government filed a motion to enforce settlement. The court held an evidentiary hearing on the motion to enforce on June 6, 2012.[3] Phinisee, who was represented by new counsel, testified that she had never been informed of the DPW

_____

[2] DPW administers Medicaid in Pennsylvania and is accordingly authorized to recover the reasonable value of benefits provided under the program from liable third parties. E.D.B. ex rel. D.B. v. Clair, 987 A.2d 681, 684 (Pa. 2009) (citing 62 Pa. Cons. Stat. Ann. §§ 201, 1409(b)(1)).
[3] In advance of the hearing, the Government filed a Notice that the Acting Assistant General for the Civil Division had approved the settlement. App. 255-56.

3

Medicaid lien and, upon learning of its existence, no longer believed that the Government's offer adequately protected A. P. The plaintiffs additionally argued that the April 19 conference could not have resulted in a binding settlement because the Government's offer was contingent upon its ability to obtain approval from the Assistant Attorney General, and because her counsel had misled her into dropping claims brought in her own name. Layser and Spencer — each of whom possesses decades of experience in the field of medical malpractice — testified that liens are involved in "virtually every" case, and that they "definitely" discussed the Medicaid lien with Phinisee on the day of the conference. App. 285, 294, 328-29, 335, 338. Layser and Spencer further testified that Phinisee was "happy" to "get it done," and, after discussing the pros and cons of the $1.2 million offer, she "enthusiastically" authorized them to accept it. App. 294, 335-36.

The Magistrate Judge granted the Government's motion to enforce settlement on August 6, 2012. The plaintiffs' former counsel filed a petition for minor's compromise[4] on August 8, 2012. The plaintiffs did not respond to the petition, and the Magistrate Judge approved it on September 4, 2012. The plaintiffs moved for reconsideration of both rulings. The Magistrate Judge denied the plaintiffs' motions for reconsideration. The plaintiffs timely appealed the Magistrate Judge's orders: (1) granting the Government's motion to enforce settlement; (2) denying reconsideration of its enforcement ruling; (3) approving the petition for minor's compromise and distributing settlement proceeds; and (4) denying reconsideration of the distribution order.

II.

_____

[4] See Local Rule 41.2 (E.D. Pa. rev. Dec. 2013).

The District Court had subject matter jurisdiction pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2679, and 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  Ordinarily, we review the denial of a motion for reconsideration for an abuse of discretion.  N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1203 (3d Cir. 1995).  However, "[b]ecause an appeal from a denial of a [m]otion for [r]econsideration brings up the underlying judgment for review, the standard of review varies with the nature of the underlying judgment."  McAlister v. Sentry Ins. Co., 958 F.2d 550, 552-53 (3d Cir. 1992).  Where the underlying judgment was "based in part upon the interpretation and application of a legal precept," our review is plenary.  United States v. Herrold, 962 F.2d 1131, 1136 (3d Cir. 1992).  To the extent that the Magistrate Judge's order was based on its factual conclusions, we review under a "clearly erroneous" standard.  Id.; see also Tiernan v. Devoe, 923 F.2d 1024, 1031 n.5 (3d Cir. 1991).

### III.

The plaintiffs first argue that "no evidence" supports the Magistrate Judge's finding that an oral settlement agreement was reached on April 19, 2012.  Pls.' Br. 9-12.  We apply Pennsylvania law to the enforceability of the parties' settlement agreement.  See Tiernan, 923 F.2d at 1033 & n.6.  The enforceability of settlement agreements is determined by general principles of contract law.  Storms ex rel. Storms v. O'Malley, 779 A.2d 548, 557 (Pa. Super. Ct. 2001).  "As with any contract, it is essential . . . that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the

5

[settlement agreement]." Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999) (quotation marks omitted).

The record in this case is replete with evidence, which the Magistrate Judge credited, that: the Assistant United States Attorneys offered to settle the case for $1.2 million;[5] Judge Rueter conveyed that offer to the plaintiffs' then-counsel; Phinisee instructed her counsel to accept the offer; and counsel did so. See App. 9 (citing App. 370, 382). The Magistrate Judge also found — and the plaintiffs do not challenge on appeal — that the plaintiffs' counsel informed Phinisee about the existence and significance of the Medicaid lien on the settlement proceeds. Because there was a meeting of the minds upon all the terms and subject matter of the settlement, the Magistrate Judge correctly held that a contract was formed on the day of the settlement conference. Cf. Taylor v. Stanley Co. of Am., 158 A. 157, 159 (Pa. 1932).

The plaintiffs next argue that, even if there were a settlement agreement, it was tentative because it was conditioned upon the approval of the Assistant Attorney General, and "[a] conditional offer has no legal or binding effect." Pls.' Br. 12. The enforceability of the parties' settlement agreement may be "obfuscated to some extent" by the

---

[5] The plaintiffs contend that the Government's offer was invalid because the Assistant United States Attorneys lacked "actual authority" to bind the Government. See Pls.' Br. 9-12. The "actual authority" requirement is an additional prerequisite for the effective formation of federal government contracts — not settlement agreements to which the Government happens to be a party. See, e.g., Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003). As previously discussed, state law governs the effect of a purported release from liability under the FTCA. Tiernan, 923 F.2d at 1033 & n.6; see also Reo v. U.S. Postal Serv., 98 F.3d 73, 77 (3d Cir. 1996) ("[T]he rules governing settlement of minor's claims are embedded in the traditional state-law domain of contract, agency, and family law."). Therefore, the plaintiffs' reference to federal government contracts law is inapt.

6

ratification requirement. <u>Ostman v. St. John's Episcopal Hosp.</u>, 918 F. Supp. 635, 644 (E.D.N.Y. 1996); <u>see</u> 28 U.S.C. §§ 516-519, 2677; 28 C.F.R. §§ 0.160(a)(2), 0.168(d). Contrary to the plaintiffs' position, however, a valid bilateral contract may arise "even though the promise of one party to perform is qualified by a condition other than the performance of the other party," provided that "the condition [does] not make the promise illusory or enable the promis[o]r to avoid performance at will." <u>Main Line Theatres, Inc. v. Paramount Film Distrib. Corp.</u>, 298 F.2d 801, 804 (3d Cir. 1962); <u>see also</u> Restatement (Second) of Contracts §§ 76, 224. "An implied obligation to use good faith is enough to avoid the finding of an illusory promise." <u>In re Cendant Corp. Litig.</u>, 264 F.3d 286, 300 (3d Cir. 2001) (quotation marks omitted).

By agreeing to the settlement of the plaintiffs' action, the parties also implicitly agreed that both the plaintiffs' and the Government's interests would be served by awarding the plaintiffs $1.2 million in exchange for the plaintiffs releasing the Government from liability under the FTCA. That the Government did, in fact, exercise good faith is illustrated by the Assistant Attorney General's approval of the settlement one month later. Because the condition of approval did not render the Government's offer of settlement illusory, the Magistrate Judge correctly found that the April 19, 2012 settlement agreement was enforceable. <u>See Ostman</u>, 918 F. Supp. at 644 (an enforceable contract was reached during the settlement conference despite the need for ratification, which the court construed as "an implied condition precedent to the maturation of the remaining duties under the settlement agreement").

7

"[T]he federal government, though not independent of the court's authority, is also not like any other litigant." United States v. U.S. Dist. Court for N. Mariana Islands, 694 F.3d 1051, 1059 (9th Cir. 2012). Indeed, it would be "highly impractical, if not physically impossible," for the Assistant Attorney General to prepare for and appear at all settlement conferences for all cases that he possesses the authority to settle. Id.; see also In re Stone, 986 F.2d 898, 905 (5th Cir. 1993) (district court abused its discretion by routinely requiring a Government representative with "ultimate settlement authority" to be present at all pretrial or settlement conferences).

"Settlement[s] of matters in dispute are favored by the law and must, in the absence of fraud and mistake, be sustained. Otherwise any settlement agreement will serve no useful purpose." Greentree Cinemas, Inc. v. Hakim, 432 A.2d 1039, 1041 (Pa. Super. Ct. 1981). There being no evidence of either fraud or mistake, we hold that the Magistrate Judge did not erroneously grant the Government's motion to enforce.[6]

IV.

---

[6] Because the parties entered a binding contract on April 19, 2012, we need not address the plaintiffs' argument that the Assistant Attorney General's ratification was "a nullity" due to the plaintiffs' having "retracted" their acceptance in the days following the settlement conference. Pls.' Br. 12-13. The plaintiffs' final argument — that the Magistrate Judge "has not ruled on" Phinisee's individual, "parental claim" for damages, Pls.' Br. 14-15 — also fails. Even assuming that such a claim is cognizable, it was extinguished by the settlement agreement. See App. 321, 323, 349-50.
    The plaintiffs also appeal the Magistrate Judge's order denying their motion for reconsideration. We will affirm the order because, as the Magistrate Judge concluded, their reconsideration motion merely "attempt[ed] to convince the court to rethink its decision," App. 22, and we have concluded that the Magistrate Judge's decision was correct.

8

The plaintiffs also challenge the Magistrate Judge's grant of the petition for minor's compromise. The plaintiffs specifically argue that the court's approval of the petition denied them procedural due process because it was filed by attorneys whom they had previously discharged. The plaintiffs also argue that the petition was legally "deficient." Pls.' Br. 9. Rule 41.2(a) of the Local Rules of the United States District Court for the Eastern District of Pennsylvania provides that, "[n]o claim of a minor . . . shall be compromised, settled, or dismissed unless approved by the court." Rule 41.2(b) and (c) further prohibit the distribution of proceeds, counsel fees, costs, or expenses out of any fund obtained for a minor without court approval. To assure that the child's interests are protected, a petition for minor's compromise "should include all relevant facts and the reasons why the guardian of the minor believes that a settlement is desirable and in the minor's best interest to discontinue, compromise, or settle the action." Klein v. Cissone, 443 A.2d 799, 802 (Pa. Super. Ct. 1982); see also Reo, 98 F.3d at 76 (courts "uniformly" look to state law to determine the validity of settlements entered between the Government and an FTCA claimant). The court, by contrast, "must concern itself with the concrete issues of 'causation' and 'proof.'" Klein, 443 A.2d at 803.

We summarily reject the plaintiffs' argument that they were deprived of due process. As the Magistrate Judge observed, although the petition was filed by the plaintiffs' former counsel, the filing was appropriate because the same attorneys had obtained the settlement. App. 28. Moreover, the petition was filed on August 8, 2012 and served upon new counsel. Thus, to the extent that a court's approval of minor's compromise could constitute a deprivation of life, liberty, or property, the plaintiffs in

9

this case were given ample notice of the petition and an opportunity to be heard. The plaintiffs neither responded to the petition nor requested an extension of time for filing a response, but rather moved for reconsideration two weeks after the petition was approved. App. 27. Under Pennsylvania law, "[a] client ratifies [her] attorney's act if [s]he does not repudiate it promptly upon receiving knowledge that the attorney has exceeded his authority." Yarnall v. Yorkshire Worsted Mills, 87 A.2d 192, 193 (Pa. 1952) (emphasis added).

We also reject the plaintiffs' contention that the petition was substantively inadequate. While not expansive, the petition set forth reasons why settlement was appropriate, such as the complexity of the medical issues involved and "numerous causation defenses" raised by the Government. App. 480. At the evidentiary hearing on the motion to enforce, the Magistrate Judge similarly opined that, if the case were to proceed to the scheduled bench trial, it would not be a "slam dunk" for the plaintiffs in light of the "mountains of dueling experts," "not the least of which are dueling experts on whether the medicine that the child was given was the reason for the liver failure." App. 279-80. The Magistrate Judge emphasized these concerns in denying the plaintiffs' motion for reconsideration — observing that, in light of the Government's medical expert testimony, the plaintiffs "ran a very meaningful risk of obtaining no recovery at all." App. 27-28. As the ultimate fact finder, the Magistrate Judge was in the best position to assess whether the settlement protected A. P.'s best interests. The Magistrate Judge found that it did. We cannot conclude that this finding was erroneous.

V.

10

For the foregoing reasons, the Magistrate Judge's orders will be affirmed.