NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4693
_____

RASHEENA PHINISEE,
Individually and on behalf of A.P., a minor, as her parent and natural guardian,
Appellant

v.

DEREK R. LAYSER, Esquire;
GILBERT G. SPENCER, JR., Esquire;
SPENCER & ASSOCIATES;
LAYSER FREIWALD, P.C.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 14-cv-3896)
District Judge:  Honorable Berle M. Schiller
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 18, 2015

Before:  FISHER, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed:  September 21, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Rasheena Phinisee, individually and on behalf of her minor daughter, A.P., appeals orders of the United States District Court for the Eastern District of Pennsylvania dismissing her complaint, denying her motion to amend findings of fact, and denying her motion for reconsideration. Because the District Court did not err with respect to any of those orders, we will affirm.

## I. Background

### A. Factual Background[1]

Between July 2008 and April 2012, Phinisee, individually and on behalf of A.P., was represented by Derek Layser, Esq., and Gilbert Spencer, Jr., Esq., and their respective law firms, Layser & Freiwald, P.C., and Spencer & Associates, in a medical malpractice action against a federally-funded health care clinic. In that action, brought against the United States under the Federal Tort Claims Act ("FTCA"), Phinisee alleged that the clinic prescribed her the drug Microbid and that her daughter contracted a disorder resulting in liver failure when she ingested the drug through Phinisee's breast milk.

Approximately two weeks before the action was set for trial, on April 19, 2012, the parties attended a settlement conference before Magistrate Judge Thomas J. Rueter. On the advice of her attorneys, Phinisee entered into a $1.2 million settlement agreement, subject to approval by a designee of the Attorney General.

---

[1] We recount the facts as alleged by the non-movant, Phinisee, accepting them as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

The evening after the settlement conference, Phinisee came to understand through online research that there was a Medicaid lien on the settlement funds.[2]  The next morning, Phinisee informed Spencer that she wished to rescind the settlement agreement. Over the next several days, Phinisee repeatedly emailed and called Spencer, restating her desire to go to trial and alleging that he had misinformed her about the existence of the Medicaid lien.  On April 26, 2012, Phinisee, unsatisfied with her attorneys' work, faxed a *pro se* motion to reopen, and, the next day, filed a motion to terminate Spencer and Layser as attorneys of record in the case.

The government responded with a motion to enforce the settlement, although the Attorney General's designee had not yet officially approved it.  Spencer and Layser also filed a motion to appoint a guardian *ad litem* for A.P. in order to complete the paperwork on the terms agreed upon at the settlement conference.  Shortly thereafter, the settlement was officially approved, and, on June 6, 2012, an evidentiary hearing on the competing motions to reopen and to enforce was held before Magistrate Judge Jacob Hart.[3]  By that time, Phinisee had retained new counsel to represent her.

---

[2] The Medicaid program, jointly funded by the federal government and the states, pays for medical services to low-income persons pursuant to state plans approved by the Secretary of the United States Department of Health and Human Services.  42 U.S.C. § 1396a(a)-(b).  The Pennsylvania Department of Public Welfare administers Medicaid in Pennsylvania and is authorized to recover the reasonable value of benefits provided under the program from liable third parties.  *E.D.B. ex rel. D.B. v. Clair*, 987 A.2d 681, 684 (Pa. 2009).  Because A.P.'s medical expenses were paid through Medicaid, the settlement proceeds were subject to a lien held by the Department of Public Welfare.

[3] Magistrate Judge Hart was, by consent, designated to conduct all proceedings in the FTCA action and enter final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

3

On August 6, 2012, Judge Hart granted the government's motion to enforce the settlement. Judge Hart concluded that Spencer and Layser had adequately explained the Medicaid lien to Phinisee, and there was no question of fraud or duress which might vitiate the settlement. Two days later, Spencer and Layser filed a minor's compromise petition on behalf of A.P. Phinisee did not respond to the petition, and Judge Hart approved it. Noting that his order granting the minor's compromise petition was the final order in the case, Judge Hart dismissed as moot Phinisee's motion to terminate Spencer and Layser as the attorneys of record and Spencer's and Layser's motion for appointment of a guardian *ad litem*.

Phinisee moved separately for reconsideration of the order granting enforcement of the settlement and the order granting the minor's compromise petition, both of which were denied. Phinisee then timely appealed both of the underlying rulings and the denial of her motions for reconsideration. On February 21, 2014, in a non-precedential opinion, we affirmed Judge Hart's orders in their entirety. *A.P. ex rel. Phinisee v. United States*, 556 F. App'x 132, 135 (3d Cir. 2014). In concluding that the motion to enforce was properly granted, we noted that "[t]he record in this case is replete with evidence, which the Magistrate Judge credited, that: the Assistant United States Attorneys offered to settle the case for $1.2 million; Judge Rueter conveyed that offer to the plaintiffs' then-counsel; Phinisee instructed her counsel to accept the offer; and counsel did so." *Id.* at 136 (footnote omitted). We also relied on Judge Hart's finding – which we noted Phinisee did not appeal – that Spencer and Layser "informed Phinisee about the existence and significance of the Medicaid lien on the settlement proceeds." *Id.*

4

After exhausting her challenges to the validity of the settlement, Phinisee has now sued Spencer and Layser for negligence, breach of fiduciary duty, fraudulent and negligent misrepresentation, and breach of contract, alleging that her former attorneys induced her to settle the medical malpractice lawsuit for significantly less than the value of the claim. She claims that, during the settlement conference, Spencer and Layser misrepresented to her that she did not have a right to assert a claim on her own behalf to recover medical expenses incurred for the care of her daughter. She also claims that Spencer and Layser failed to notify her that she was responsible for the costs of caring for her daughter until her daughter reached the age of majority. Moreover, Phinisee alleges that her attorneys withheld an expert report and deposition transcript, which she says strongly supported her case. Finally, according to Phinisee, Spencer and Layser convinced her that the negligence claim was "tenuous," when, in fact, the evidence of liability was "rock-solid, almost to the point of being overwhelming." (App. at 37.)

Spencer and Layser moved to dismiss her complaint for failure to state a claim, and the District Court granted that motion. The Court held that Phinisee's negligence, breach of fiduciary duty, negligent misrepresentation, and breach of contract claims were, under the circumstances, barred by Pennsylvania law, and that her fraudulent misrepresentation and concealment claim was barred by the doctrine of collateral estoppel. Phinisee then filed a motion to amend the findings of fact and judgment, or, in the alternative, a motion for reconsideration, which the District Court denied. In response, Phinisee filed a motion for reconsideration of the denial of her motion to amend, which the Court also denied. Phinisee now timely appeals those several rulings.

5

## II.  Discussion[4]

Phinisee contends that the District Court erred in applying Pennsylvania law to foreclose relief on a number of her claims and in concluding that collateral estoppel barred her remaining claim.  Her arguments are unpersuasive.

### A.  The Non-Fraud Claims

In *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346 (Pa. 1991), the Pennsylvania Supreme Court held that dissatisfied plaintiffs may not sue their attorneys for negligence, breach of fiduciary duty, or breach of contract following a settlement to which the plaintiffs agreed, absent proof of fraud.  "Simply stated," the court said, "we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action."  *Id.* at 1348. The *Muhammad* court explained that the "primary reason" for its decision was that allowing such suits would "create chaos in our civil litigation system."  *Id.* at 1349. According to the court, "[l]awyers would be reluctant to settle a case for fear some enterprising attorney representing a disgruntled client will find a way to sue them for something that could have been done, but was not."  *Id.*  (internal quotation marks omitted).  The court thus "refuse[d] to endorse a rule that will discourage settlements and increase substantially the number of legal malpractice cases."  *Id.*

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010).

6

Applying *Muhammad*, the District Court concluded that Phinisee's claims, other than those alleging fraud, were barred as a matter of law. Phinisee makes no attempt to distinguish *Muhammad* or show why that decision is inapplicable. Instead, she relies on *McMahon v. Shea*, 688 A.2d 1179 (Pa. 1997), a subsequent plurality decision of the Pennsylvania Supreme Court which arguably narrowed the holding of *Muhammad*.

In *McMahon*, the plaintiff's attorney failed to advise him of the consequences of not merging a prior alimony agreement into his final divorce decree. *Id.* at 1180. The Pennsylvania Supreme Court ruled that the plaintiff could maintain a malpractice suit against his attorney to recover damages incurred from his obligation to pay alimony to his remarried wife. *Id.* at 1182. The *McMahon* court emphasized that the plaintiff was "not attempting to gain additional monies by attacking the value that his attorneys placed on his case," but instead was "contending that his counsel failed to advise him as to the possible consequences of entering into a legal agreement" and thus that *Muhammad* did not apply. *Id.* As the District Court noted, *McMahon* merely clarified that there was a distinction between "lawsuits alleging a failure to inform a client of the legal ramifications of a settlement agreement and lawsuits second-guessing an attorney's professional judgment in evaluating the value of a claim." *Phinisee v. Layser*, No. Civ. A. 14-3896, 2014 WL 5780935, at *1 (E.D. Pa. Nov. 5, 2014). *Muhammad* applies in the latter category of cases, while *McMahon* applies in the former.

This case fits squarely within the latter category. At its core, this malpractice claim is an attempt by Phinisee to recover a greater amount than the $1.2 million settlement to which she agreed after having been fully advised of the legal consequences

7

of entering into the settlement agreement. In her amended complaint, Phinisee twice alleges that she suffered damages because she "settled the lawsuit for value significantly less tha[n] the value of the case." (App. at 41.) Unlike the plaintiff in *McMahon* – who was forced to pay alimony to his former spouse after her remarriage by virtue of the failure to merge the alimony agreement with the divorce decree – Phinisee suffered no new financial obligations or additional damages as a result of signing the settlement agreement. Her purported damages, premised on her own subjective assessment of the likelihood of success at trial, are purely speculative.

In her earlier suit before Judge Hart, Phinisee argued that she was not informed prior to agreeing to settle that the proceeds of the settlement award were subject to a Medicaid lien. She does not appear to be making that argument now. But even if she were alleging malpractice due to her attorneys' failure to inform her about the Medicaid lien, that argument would fail because Judge Hart found that, in fact, Phinisee was informed about the lien before she agreed to the settlement. Moreover, Phinisee did not challenge that finding on appeal from the grant of the motion to enforce the settlement. *Phinisee*, 556 F. App'x at 136 ("The Magistrate Judge also found – and the plaintiffs do not challenge on appeal – that the plaintiffs' counsel informed Phinisee about the existence and significance of the Medicaid lien on the settlement proceeds.").

Instead, she claims that her attorneys misrepresented to her that she did not have a right to assert a claim on her own behalf. But Judge Hart, in concluding that the settlement was enforceable, specifically addressed that allegation and found that it constituted nothing more than "second thoughts as to the wisdom of her attorney's

8

advice." (Supp. App. at 71.) He further noted that "the advantage Ms. Phinisee seems to think she would have obtained by bringing a claim in her own name to recover for medical expenses is illusory" because Medicaid paid all of A.P.'s medical expenses, so even if Phinisee did recover anything, Medicaid would then collect from her. (*Id.*) Similarly, Phinisee's claim that her attorneys failed to use favorable expert testimony to increase the settlement amount is merely another attack on the value of the settlement to which she agreed.

Finally, Phinisee's claim that Spencer and Layser convinced her that the negligence claim was weak, when, according to her, the evidence of liability was "rock-solid, almost to the point of being overwhelming" is also without merit. (App. at 37.) That argument plainly falls into the category of claims that *Muhammad* bars – that an attorney underestimated the value of a potential claim. Moreover, Judge Hart specifically assessed the strength of Phinisee's negligence claim and, like her attorneys at the time, found it lacking. As Judge Hart noted, the government "posted a serious challenge to the liability aspect" of the case by presenting medical experts who testified that Macrobid had never been linked to bilary artesia, the disease contracted by A.P. (Supp. App. at 61.) A panel of our Court credited that finding on appeal. *Phinisee*, 556 F. App'x at 138. In concluding that the settlement was enforceable, Judge Hart further reasoned that "the amount the [g]overnment was willing to offer in settlement was limited in accordance with the weakness in Phinisee's evidence on liability." (Supp. App. at 71.) Although, in light of *Muhammad*, we need not assess the wisdom of the advice regarding the strength

9

of Phinisee's claims, it bears mention that her attorneys' advice was not without ample support in the record.[5]

Because Phinisee's non-fraud claims are nothing more than an expression of dissatisfaction with the amount of money that she agreed to and received in the settlement, they are barred by *Muhammad*.

## B.     The Fraud Claim

The District Court held that Phinisee's fraudulent misrepresentation and concealment claim was barred by the doctrine of collateral estoppel.  Under Pennsylvania law, collateral estoppel bars litigation if: (1) an identical issue has been decided in a prior action; (2) there has been a final judgment on the merits; (3) the party against whom estoppel is asserted was a party, or in privity with a party, to the prior litigation; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in question.  *Aetna Life & Cas. Corp. v. Maravich*, 824 F.2d 266, 268 (3d Cir. 1987).  A litigant who was not a party to a prior judgment may use a prior judgment

_____

[5] Phinisee also says, with little argument or support, that Spencer and Layser engaged in representation against her and her daughter's best interests when they filed the minor's compromise petition.  Phinisee made the same argument before Judge Hart in her motion for reconsideration of the order granting the minor's compromise petition and before us on appeal from that ruling.  We conclude now, as we did then, that her argument is without merit.  In our opinion affirming Judge Hart's rulings, we noted that, although the petition was filed by the Phinisee's former counsel, "the filing was appropriate because the same attorneys had obtained the settlement." *Phinisee*, 556 F. App'x at 137.  Moreover, we emphasized that the petition was served upon Phinisee's new counsel and that she had ample opportunity to respond.  Because she failed to do so, we concluded that Phinisee had ratified her former attorneys' actions and could not challenge their authority to file the petition. *Id.* at 137-38 (noting that "[u]nder Pennsylvania law, 'a client ratifies her attorney's act if she does not repudiate it *promptly* upon receiving knowledge that the attorney has exceeded his authority'") (brackets omitted) (quoting *Yarnall v. Yorkshire Worsted Mills*, 87 A.2d 192, 193 (Pa. 1952)).

"offensively" to estop an opposing party from relitigating issues that were decided in the previous proceeding. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 331 (1979).

Phinisee appears only to challenge the first prong of the collateral estoppel analysis. She claims that the issue here is one of attorney malpractice and was not previously decided, but she is incorrect. The issue here is of fraudulent misrepresentation and concealment; she is alleging that her attorneys "made false representations of material facts at the time of the settlement conference and intentionally concealed material facts" from her. (App. at 41.) That issue was addressed and decided by Judge Hart. In concluding that the settlement agreement was valid and enforceable, he determined that "there is no question of fraud or duress here, which would vitiate Phinisee's consent." (Supp. App. at 67.) Upholding that ruling, we explicitly noted that there was "no evidence of either fraud or mistake" associated with the settlement. *Phinisee*, 556 F. App'x at 137. Because the issue of fraud was previously litigated, Phinisee is estopped from relitigating it, and the fraud claim was properly dismissed. For the same reason, Phinisee's motion to amend findings of fact and judgment and her motion for reconsideration were also properly denied.

## III. Conclusion

For the foregoing reasons, we will affirm the District Court's orders.

11