761 A.2d 1159

Susan FANCSALI, A Minor, by Paul FANCSALI and Kimberlee Fancsali, Her Parents and Natural Guardians, and Paul Fancsali and Kimberlee Fancsali, husband and wife, Appellants,

v.

UNIVERSITY HEALTH CENTER OF PITTSBURGH, a Pennsylvania Corporation; and Magee–Women's Hospital, a Pennsylvania Corporation, and Robert Guthrie, M.D., Michael Balsan, M.D., Dena Hofkosh, M.D., Brian Clista, M.D., C. Bilinski, M.D., L. Cook, M.D., K. Sukarochana, M.D., Ashook K. Jain, M.D., J. Pipepi, M.D., J.D. Abino, M.D., Mark S. Scher, M.D., individuals; and Magee–Women's Hospital, Department of Radiology, Jules H. Sumkin, D.O., Medical Director, Thomas Bender, M.D., Jocyline L. Medina, M.D., Christopher M. Johns, M.D., Frederick S. Sherman, M.D.; and Magee–Women's Hospital, Department of Ultrasound/ Obstetrics and Gynecology, Lyndon M. Hill, Medical Director, Jerry G. Martin, M.D., Sheila M. Ward, M.D.; and Magee–Women's Hospital, Department of

Reproductive Genetics, John A. Barranger, M.D.; and South-western Pediatric Association, a Pennsylvania Professional Corporation, Harvey M. Rubin, M.D., K.G. Pai, M.D., E. Markus, M.D.; and Anthony F. Gentile, M.D., Michael F. Lupinetti, M.D., and Gary J. Connor, M.D. t/d/b/a Gentile Lupinetti Associates, Appellee.

Supreme Court of Pennsylvania.

Argued March 8, 1999.

Decided Nov. 27, 2000.

Falco A. Muscante, Petraglia & Muscante, Pittsburgh, for Susan Francscali, et al.

Andrew G. Thiros, Francis Garger, Davies McFarland & Carroll, PC, Pittsburgh, for Southwestern Pediatric and Drs. Rubin & Pai.

Kathleen Smith-Delach, Phillips Faldowski & McCloskey, PC, Pittsburgh, for Ashok Jain, M.D.

Andrew F. Adomitis, Grogan Graffam McGinley & Lucchino, PC, Pittsburgh, for Drs. Gentile, Lupinetti, Connor & Gentile Lupinetti, Assoc.

Robert J. Marino, Dickie McCamey & Chilcote, Washington, DC, for Univ. Health Center of Pittsburgh.

## *OPINION*

ZAPPALA, Justice.

The issue before this Court is whether the Superior Court properly affirmed the trial court's judgment of non pros in the Appellants' medical malpractice action. We reverse.

Susan Fancsali was born on July 16, 1992. Shortly after her birth, she suffered from hypoxia and encephalopathy and contracted Group B Streptococcus. On July 6, 1994, Paul and Kimberlee Fancsali, Susan's parents, filed a praecipe for writ of summons naming numerous physicians and hospitals as defendants. On August 24, 1994, various defendants ruled the Fancsalis to file a complaint; five days later, other defendants did the same. Although no complaint was filed within the twenty days allowed by the rules of civil procedure, the defendants took no action.

Almost four months later, in December of 1994, the Fancsalis filed a motion for an extension of time to engage in additional discovery. By order dated December 16, 1994, the court allowed appellants until January 31, 1995, to file their complaint. Again no complaint was filed within the allotted time, but again the defendants took no action. On February 7, 1995, the Fancsalis filed a Petition for Leave to Discontinue a Minor's Action Without Prejudice. The defendants filed

objections to the petition, claiming that the dismissal should be with prejudice. Following oral arguments, by order dated November 6, 1995, the court granted the Fancsalis an extension of time until March 1, 1996, to complete discovery and to file their complaint. The court did not expressly grant or deny the Petition for Leave to Discontinue a Minor's Action Without Prejudice.[1] The Fancsalis filed a notice of appeal of the trial court's November 6, 1995 order, which the Superior Court quashed as interlocutory.

The Fancsalis failed to file a complaint by the March 1, 1996, deadline. On August 30, 1996, the defendants filed a Praecipe for Entry of Final Judgment, pursuant to the court's order of November 6, 1995. On September 3, 1996, a judgment of non pros was entered. The Fancsalis filed a petition to strike the judgment of non pros on September 20, 1996. The court dismissed the petition on September 30, 1996.[2] The Fancsalis appealed to the Superior Court, which affirmed. *Fancsali by Fancsali v. Univ. Health Ctr. of Pittsburgh,* 700 A.2d 962 (Pa.Super.1997).

The controlling question in this case is whether the common pleas court erred in denying the Fancsalis' petition to discontinue their minor daughter's action without prejudice.[3]

1. The court's order stated:

   AND NOW this 6th day of November, 1995, after argument and due consideration, it is ordered, adjudged and decreed that Paul Fancsali and Kimberlee Fancsali, parents and natural guardians of Susan Fancsali, a minor, be and are hereby granted leave to conduct such discovery as they deem necessary, and file a complaint on or before March 1, 1996, it being understood that no further extensions will be granted.

   This order effectively denied the request for voluntary dismissal of the minor's action without prejudice.

2. In that order, the court stated that "all of the concerns raised in the petition to strike the judgment of non pros have been disposed of by this Court's Opinion and Order of November 6, 1995." Accordingly, the court's September 30, 1996 order refusing to strike the judgment of non pros, incorporated by reference the order of November 6, 1995, on which basis the judgment of non pros was entered.

3. The precise issue is whether the court erred in refusing to strike the judgment of non pros. Where judgment of non pros is entered, the proper procedure is for the plaintiff to move to open or strike the

The general rule with respect to discontinuance is contained in Pa.R.C.P. 229:

(a) A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before the commencement of the trial.

(b) A discontinuance may not be entered as to less than all defendants except upon the written consent of all parties or leave of court after notice to all parties.

(c) The court, upon petition and after notice, may strike off a discontinuance order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense or prejudice.

This rule reflects the longstanding practice in Pennsylvania, which was well described in *Consolidated National Bank v. McManus*, 217 Pa. 190, 66 A. 250 (1907). In *McManus*, the plaintiff entered a discontinuance, the defendant filed a rule to show cause why it should not be stricken, and the court discharged the rule. We characterized this as "equivalent to a grant of leave." *Id.* at 192, 66 A. at 250. Prior thereto, we explained:

A discontinuance in strict law must be by leave of court, but it is the universal practice in Pennsylvania to assume such leave in the first instance. This was stated to be the established practice as long ago as 1843, in *Schuylkill Bank v. Macalester*, 6 Watts & S. 147, where it is said per curiam: 'All the cases show that a discontinuance must be founded on the express or implied leave of the court. In England this leave is obtained on motion in the first instance, and

judgment, and, if unsuccessful, to appeal the denial of that motion. Here, the judgment of non pros was entered on the basis of the Fancsalis' failure to meet the deadline for filing a complaint set in the order of November 6, 1995. The Fancsalis, however, maintain that the November 6th order was erroneous. They contend that rather than granting a further continuance, the court should have permitted them to discontinue the action without prejudice. Because the November 6th order was interlocutory, it could not be appealed immediately as of right; the court's denial of permission to discontinue was not reviewable until after the entry of judgment. Consequently, following the entry of judgment and denial of the petition to strike, that issue is ripe for review. If we conclude that the order was erroneous, the judgment based on it must be held to be erroneous as well.

here it is taken without the formality of an application, but subject to be withdrawn on cause shown for it; that is the whole difference.' The causes which will move the court to withdraw its assumed leave and set aside the discontinuance are addressed to its discretion, and usually involve some unjust disadvantage to the defendant or some other interested party, such as a surety.

*Id.* at 191–92, 66 A. at 250. It is apparent, then, that the question is the same whether it is placed before the court by the plaintiff requesting express leave to discontinue or by the defendant seeking to have a discontinuance stricken. Moreover, it is clear that the question is addressed to the court's discretion.

■ When the trial court reaches a conclusion calling for the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion under the same factual situation. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Paden v. Baker Concrete Constr.*, 540 Pa. 409, 412, 658 A.2d 341, 343 (1995)(quoting *Mielcuszny et al. v. Rosol*, 317 Pa. 91, 93, 94, 176 A. 236 (1934)).

Rule 229(c) identifies a number of factors for the court to consider in exercising its judgment when asked to strike off a discontinuance: "unreasonable inconvenience, vexation, harassment, expense or prejudice." As indicated above, the same considerations are implicated where the court is asked to give express permission for a discontinuance. In the latter case, the reasons for requiring that express leave be granted may suggest additional elements for the court's deliberation. Such is the situation here, where leave of court is required pursuant to Pa.R.C.P. 2039(a), which states, "[n]o action to which a minor is a party shall be compromised, settled or

discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor."

█ It has been stated that "Rule 2039 was adopted to ensure that the interests of minor litigants are protected above all other conflicting interests." *Estate of Murray by York Bank and Trust Co. v. Love*, 411 Pa.Super. 618, 602 A.2d 366, 369 (1992), citing *Klein v. Cissone*, 297 Pa.Super. 207, 443 A.2d 799 (1982). See also *Dengler by Dengler v. Crisman*, 358 Pa.Super. 158, 516 A.2d 1231 (1986) and *Wilson v. Bensalem Township School District*, 27 Pa.Cmwlth. 609, 367 A.2d 397 (1976). Of course, the context of this statement is not to be overlooked. Like most cases discussing Rule 2039, *Estate of Murray* involved a settlement rather than a simple discontinuance.[4] In this setting, where the Rule operates as a mechanism for trial courts to prevent unfair settlements, the interests of the minor are bound to be of primary if not preclusive effect. In the context of cases not involving a compromise and settlement, however, it may be appropriate to accord somewhat lesser weight to the interests of the minor. Nevertheless it is clear that in deciding whether to allow the discontinu-

4. In fact, *Estate of Murray* was controlled more directly by Pa.R.C.P. 2206, which provides:

(a) No action for wrongful death in which a minor or an incapacitated person has an interest shall be discontinued nor shall the interest of a minor or an incapacitated person in any such action or in a judgment for damages recovered therein be compromised or settled until the court, upon petition of any party in interest, shall allow the discontinuance or approve the compromise or settlement as being fair and equitable. . . .

(c) In approving a compromise or settlement . . . the court may also approve an agreement for the payment of counsel fees and other proper expenses out of the share of damages to which the minor or incapacitated person is entitled.

The question presented was whether in approving a settlement of a wrongful death claim the common pleas court had the authority to modify a fee agreement, reducing counsel fees to twenty per cent of the recovery rather than thirty-three percent. In holding that the court did have such authority, Superior Court rejected the argument that Rule 2206 limited the court to approving fee agreements and did not convey power to modify such agreements to ensure that the fees are fair and equitable. Superior Court interpreted Rule 2206 in conjunction with Rule 2039, stating that "both rules are intended to protect the rights of minor litigants."

ance of an action involving a minor, the court must give some consideration to the interests of the minor [Rule 2039(a) ] in addition to considering unreasonable inconvenience, vexation, harassment, expense and prejudice [Rule 229(c) ].

The common pleas court's opinion summarized the Fancsalis' explanation for proceeding as they had, and for seeking to discontinue their daughter's action.

Plaintiffs argued to the Court that they had experienced difficulties in obtaining medical records from the various medical providers, and, for that reason, filed their praecipe for writ of summons. Thereafter, they received medical records, which they forwarded for review to medical experts. They contended that the experts informed them that they could reach no conclusions without additional considerable discovery, including the taking of many depositions. Plaintiff parents indicated to counsel that they could not afford the expense involved in such a procedure, and counsel indicated that he could not afford to undertake the financing of such a procedure on their behalf. Plaintiffs conceded at argument that the statute of limitations has run with respect to the cause of action of the parents in their own right, but that the statute with respect to the minor is tolled until two years after she reaches the age of 18.

R. 56a. The court also explained the defendants' reliance on *Foti v. Askinas*, 432 Pa.Super. 604, 639 A.2d 807 (1994) in support of their claim that the motion to discontinue should be denied, or in the alternative, that the discontinuance should be with prejudice. In *Foti*, Superior Court held that the common pleas court had abused its discretion in granting a motion by parents to discontinue without prejudice a medical malpractice action they had brought on behalf of their child.

The common pleas court acknowledged that this case was similar to *Foti* in that both involved parents attempting to discontinue medical malpractice actions brought on behalf of a child. The court characterized the cases as "quite different", however, with respect to the length of time and amount of effort that had gone into the litigation prior to the petition to dismiss. With this discussion as background, the court indi-

cated that it was "reluctant to foreclose a minor's opportunity to make a recovery, if indeed a viable cause of action exists," but it was also "reluctant to force all of these defendants, who have been sued and have had appearances entered on their behalf, to remain in limbo until the end of July of 2012." R. 57a. The court then concluded "that it will not impose too great a burden on defendants to allow plaintiffs some additional time to investigate the possibility of finding other counsel who may be willing to undertake the representation on terms which are economically agreeable to all concerned, complete such discovery as is necessary, and file a complaint." *Id.*

■ The court's statement that it was "reluctant to force [the defendants] . . . to remain in limbo until the end of July of 2012," combined with its implicit decision in the defendants' favor regarding the request to discontinue, suggests that the determinative factor in the court's exercise of its discretion was the possibility that due to the "Minority Tolling Statute", 42 Pa.C.S. § 5533(b), the defendants would, for a considerable period of time, be subject to being sued again. We hold that the court abused its discretion in giving weight to this consideration.

■ Section 5533(b) provides:

If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.

In other words, the period within which a minor's action must be commenced is measured not from the time the cause of action accrues, but from the time he or she turns eighteen. This is true regardless of the fact that a guardian may sue on behalf of a minor at any time after a cause of action accrues. If a guardian does sue on behalf of a minor, the action has

been commenced before the limitation period has started to run. Nevertheless, the limitation period remains suspended. As in any other situation, the commencement of an action has no bearing on the limitation period.

In this case, Susan Fancsali's cause of action accrued when she was born on July 16, 1992. Pursuant to 42 Pa.C.S. § 5533(b), the two-year limitation period for her personal injury claim [5] does not begin to run until July 16, 2010. Her parents' claims arising out of the same facts likewise accrued when Susan was born, but the two-year limitation period for their claims began to run at that time. The fact that Susan's parents chose to bring an action on her behalf at the same time they sued in their own right does not alter the fact that Susan's claim, when viewed in isolation, could have been filed at any time prior to July of 2012.

This being the case, we cannot agree with the Appellees' argument, based on the *Foti* decision, that the combination of a discontinuance without prejudice and the Minority Tolling Statute would provide Susan with an advantage. We fail to see how Susan Fancsali would be in any better position vis-à-vis the Appellees than any other minors would vis-à-vis their defendants simply because an action on her behalf was commenced by writ of summons and later discontinued. Similarly, we cannot attribute as prejudice the fact that the Appellees "would have the threat of a potential lawsuit hanging over their heads" for many years. Brief of Appellees University Health Center of Pittsburgh, Inc., Magee–Women's Hospital, et al. at 9. This "threat" is in no way connected to the commencement or discontinuance of the action. It is, rather, entirely a function of the Minority Tolling Statute. The Appellees would be subject to the same "threat" of a potential lawsuit by Susan Fancsali if the action filed on her behalf were discontinued without prejudice as they would have been had that action never been filed.[6]

5. 42 Pa.C.S. § 5524(2).

6. We disapprove any language in *Foti* that suggests otherwise. For example, the Superior Court stated that as a result of the discontinuance without prejudice, "appellants may be compelled to defend them-

As the common pleas court recognized, the circumstances in *Foti* were significantly different from the situation here. In *Foti*, at the time the discontinuance was sought the case had been pending for nearly five years, involving much effort and much expense. Depositions had been taken and interrogatories had been exchanged, at times only after court intervention necessitated by the plaintiffs' resistance to the defendants' discovery requests. Despite this extensive investigation, the plaintiffs were unable to produce an expert witness to establish that the defendants were negligent. Thus, in the terms of Rule 229, the defendants demonstrated at least unreasonable inconvenience and expense.

Here, the action was commenced by writ of summons, but no complaint was ever filed. Counsel entered appearances on behalf of the Appellees, but there was little or no court activity on behalf of the Appellees beyond ruling the plaintiffs to file a complaint. Medical records were forwarded to the Appellants' counsel shortly after the action was commenced, but there was no further discovery as such. Finally, the Appellants did not concede that no expert could be found to establish negligence. Rather, they asserted that neither they nor their attorney could afford to advance the money necessary to have an expert examine their records, a representation the common pleas court apparently accepted. Thus, the Appellees demonstrated neither unreasonable inconvenience, expense,[7] nor any of the

selves a second time at some point during the next twelve years. This would be contrary to the purpose of statutes of limitation." *Foti*, 639 A.2d at 809–10. The General Assembly has determined that it is the public policy of the Commonwealth to suspend the running of any limitation period for any claim that accrues while a person is a minor. Compelling persons to defend themselves at any point before the limitation period expires cannot be "contrary to the purpose" of that limitation period. The legislative judgment is that regardless of the concerns underlying limitations periods generally (e.g., loss of memory, loss of evidence, insecurity, etc.), it is not "unfair" to permit a person to be sued as much as twenty years after the occurrence of an accident.

Nevertheless, because the Superior Court in *Foti* applied the correct standard, and its conclusion that the common pleas court abused its discretion was supported by other, valid considerations specific to the circumstances of the case, it need not be overruled.

7. Pa.R.C.P. 231(a) provides: "After a discontinuance ... the plaintiff may commence a second action upon the same cause of action upon

other considerations identified in Rule 229 as considerations weighing against allowing a discontinuance. On the other side of the balance is the minor's interest in being able to seek legal redress for damages within the time and according to the procedures established by law.

Based on all the circumstances, we conclude that it was an abuse of discretion for the common pleas court to deny leave to discontinue the minor's action and order the Appellants to proceed with the action by filing a complaint within the specified time. Accordingly, we reverse the order of the Superior Court and direct that the judgment of non pros be stricken. Furthermore, we vacate the November 6, 1995, order of the common pleas court and direct that the Petition for Leave to Discontinue Minor's Action be granted.

Mr. Justice CAPPY did not participate in the consideration or decision of this case.

Madame Justice NEWMAN files a concurring and dissenting opinion.

NEWMAN, Justice, Concurring and Dissenting.

### *CONCURRING AND DISSENTING OPINION*

I agree with the Majority that the Minority Tolling Statute applies to this case. Susan Fancsali's cause of action accrued when she was born. The Minority Tolling Statute suspends the running of the two-year limitation period for her personal injury claim [1] until she is eighteen years old. She may pursue her claim during her minority only through a guardian, but that guardian's decision to file suit does not magically cause the suspended limitation period to begin running, nor does it rewrite history to say that the limitation period was never suspended. The two-year limitation period remains suspend-

payment of the costs of the former action." We point out this rule not only because it offers some protection for the financial interests of defendants, but also because it demonstrates that the mere possibility of a defendant being sued again on the same cause of action, far from being presumed to be prejudicial, is expressly contemplated as a possibility

1.  42 Pa.C.S. § 5524(2).

ed, and Susan's guardians are free to initiate, and discontinue, and reinstitute[2] her minor's action at any time during that suspension without a limitation defense being available to the Appellees. However, this does not mean that Susan's guardians have an absolute and unfettered right to file, discontinue and reinstitute actions leaving the Appellees without recourse while they anxiously wait for the extended statute of limitations to run. Rule 229 provides:

(a) A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before the commencement of the trial.

(b) A discontinuance may not be entered as to less than all defendants except upon the written consent of all parties or leave of court after notice to all parties.

(c) The court, upon petition and after notice, may strike off a discontinuance order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense or prejudice.

Furthermore, Pa.R.C.P.2039(a) provides:

(a) No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor.

Therefore, the control over discontinuance of a minor's action pursuant to Rule 2039(a),[3] and the general provisions of Rule 229(c), provide a basis for the court to hold a hearing on the issue of prejudice to the defendant. The power of the court to prohibit a voluntary discontinuance of an action without prejudice to refile is separate and distinct from the question of

**2.** There is another example to illustrate this point: a person to whom a cause of action accrues that is governed by a six-year limitation period may file suit two years after the accrual date, voluntarily discontinue the suit without prejudice, refile the action a year later, then again discontinue without prejudice, and refile the action again a year later— all without the risk of facing a limitation defense. *Cf. Haefner v. Sprague*, 343 Pa.Super. 342, 494 A.2d 1115 (1985) (although first action dismissed on procedural grounds, second action permitted because still within limitation period).

**3.** The Minority Tolling Statute makes no mention of the right of the guardian to withdraw and reinstitute the action of the minor.

whether the plaintiff remains within the applicable limitation period.

I view the enactment of the Minority Tolling Statute as a legislative decision to extend the limitation period for all minors for the duration of their minority, which leaves all tortfeasors who have harmed children potentially liable to a lawsuit until that child attains his or her majority. Accordingly, the legislature has determined that it is not unfair to defendants that they may be sued twenty years after an accident occurred and not have a limitation defense available to them. Therefore, when a guardian files the minor's action soon after the cause of action accrues and then decides voluntarily to discontinue that lawsuit, the defendant cannot claim prejudice merely because the suit can be refiled many years later with no limitation defense available to him or her. He or she may be in no worse a position, with respect to the passage of time, than if no minor's action had been filed but the child institutes his or her own action when he or she is no longer a minor.

However, this does not mean that the defendant is precluded from seeking relief. If there are circumstances involved in his or her long-term susceptibility to suit, the trial court should consider this when deciding whether to allow a discontinuance with prejudice. In the similar situation of a motion for non pros due to docket inactivity, *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998), this Court held that prejudice to a defendant will not be presumed. However, if a plaintiff fails to proceed promptly, offers no compelling reason for the delay, and the delay causes prejudice to the defendant, non pros may be entered. The determination of actual prejudice should focus on the conduct of the parties, as specifically set forth below in this Concurring and Dissenting Opinion.

It is my belief that when we read the Minority Tolling Statute in conjunction with the relevant Rules of Civil Procedure, prejudice to defendants is important in deciding whether to discontinue an action with or without prejudice. I therefore disagree with the Majority that it was necessarily an abuse of discretion for the trial court to consider the effect that being

susceptible to suit until July of 2012 would have on the Appellees. Accordingly, I would remand this matter for the trial court to evaluate whether the Appellees have suffered any actual prejudice. The determination of prejudice should focus on the conduct of the parties, such as: (1) the extent to which discovery has proceeded; (2) the expenses already incurred by the defendants; (3) how many times the plaintiffs have filed and then discontinued the litigation; (4) any hardship to the defendants by postponement of the litigation; (5) whether important evidence or testimony may be lost if the action is put in abeyance; (6) whether the guardians made a good-faith effort to advance the litigation after filing suit; and (7) whether the guardians have provided sufficient reasons why they wish to discontinue the litigation without prejudice.[4]

Accordingly, I dissent from the portion of the Majority's Opinion that directs the trial court to grant the Petition for Leave to Discontinue a Minor's Action.

4. In the present case, the Fancsalis apparently sought a discontinuance because they could not afford to pay the experts who would be necessary to prove proximate causation. It would not be inappropriate, under those circumstances, for the trial court to probe the veracity of that claim by inquiring into the financial arrangements between the Fancsalis and their attorneys and whether they could have made a contingent fee agreement where counsel would have paid costs. Such arrangements are customary between plaintiffs' attorneys and their clients.