J-S34014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: N.T., AN ALLEGED INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.T. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 878 MDA 2021 |

Appeal from the Order Entered May 10, 2021
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87387

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 16, 2022**

Appellant, N.T., appeals from the May 10, 2021 Order that adjudicated her incapacitated and appointed a plenary guardian of her person and estate. Appellant raises challenges to the sufficiency and weight of the evidence. After careful review, we affirm.

On July 10, 2020, Liberty Healthcare, Inc.[1] (the "Agency"), received a report of need regarding Appellant, which alleged self-neglect. After investigation, on September 15, 2020, the Agency filed a Petition for Appointment of Permanent Guardian of Person and Estate asserting that Appellant was, *inter alia*, malnourished, over medicated, in danger of eviction, uncooperative with services, suffering from mental health disorders, and

_____

[1] The Pennsylvania Department of Human Services contracts with Liberty Healthcare, Inc., to provide adult protective services throughout Pennsylvania.

unable to provide for her own basic needs. At the time, Appellant was 55 years old and residing alone in a long-term motel. Appellant is diagnosed with personality disorder, body dysmorphic disorder, and obsessive-compulsive disorder. Appellant has four adult children who were each served with a copy of the Agency's petition.

The trial court held hearings on March 29, 2021, April 20, 2021, and May 4, 2021. On March 29, 2021, the trial court heard testimony from Nora Callinan, M.D., Appellant's primary care physician; Kenneth R. Carroll, Ph.D., who completed a psychological evaluation on Appellant; and Trinidad Diaz-Cruz, an Agency investigator.

Dr. Callinan testified as an expert in family medicine. In sum, Dr. Callinan testified that she began treating Appellant in July 2020 and had a total of five visits with Appellant, one in-person and four phone visits. Dr. Callinan stated that she had ongoing concerns that Appellant was not taking her prescription opiates appropriately for chronic neck and back pain[2], appeared malnourished, and did not have appropriate transportation to obtain groceries and medical interventions. Dr. Callinan testified that she contacted the Agency to express her concerns and consulted with Dr. Carroll to perform a psychological exam on Appellant to determine whether Appellant had the capacity to make decisions. Dr. Callinan explained that, ultimately, she had

---

[2] Appellant has an ongoing prescription from her previous primary care physician for 40 milligrams of OxyContin every 12 hours and 30 milligrams of Oxycodone every six hours as needed for severe pain.

to dismiss Appellant from her medical practice because Appellant was verbally abusive to office staff on a consistent basis, and it was not possible to have a "good therapeutic relationship" with Appellant. N.T. Hearing, 3/29/21, at 37. Finally, Dr. Callinan opined that, based on her interactions with Appellant, she had concerns about Appellant's ability to receive information, consider the information, and make reasonable decisions about her healthcare as well as concerns about Appellant's ability to obtain food.

Dr. Carroll testified as an expert in psychology and psychological evaluation for competency. He explained that he performed a psychological evaluation of Appellant in Dr. Callinan's office.[3] Dr. Carroll testified that Appellant was uncooperative with the evaluation, but he was able to observe her actions for an hour. Dr. Carroll informed the court that Appellant exhibited pressured, rapid, disorganized speech and switched from topic to topic. Dr. Carroll testified that he observed manic behavior but noted that Appellant was taking thirty-four medications at the time, many of which were stimulants that could be causing the behavior.[4] Dr. Carroll testified that, in his opinion, at the time of the evaluation Appellant was incapacitated and noted that "[m]aybe if she was off the medicines or other circumstances she might present

---

[3] Appellant did not receive prior notice of the psychological evaluation and thought she was going to a scheduled medical appointment with her primary care physician.

[4] For example, Appellant was taking high doses of Adderall, Prozac, BuSpar, and Wellbutrin, which Dr. Carroll opined were all stimulants as well as using an asthma inhaler, which Dr. Carrol testified could "contribute to agitation and anxiety." N.T. Hearing, 3/29/21, at 74-75.

differently." ***Id.*** at 63-64. Finally, Dr. Carroll testified that, based on the testimony he heard that day in court, his opinion that Appellant was incapacitated had not changed.

Ms. Diaz-Cruz testified that she visited Appellant at the motel on several occasions. Ms. Diaz-Cruz testified regarding pictures that she took of Appellant's motel room and explained the reason for the clutter "could be health wise, it could be hoarding, it could be a psychological disorder." ***Id.*** at 82. Ms. Diaz-Cruz stated that Appellant often pays her rent late, and the Agency paid her rent on one occasion. She informed the court that Appellant receives social security income as well as food stamps. Ms. Diaz-Cruz attempted to implement community-based services, which were discontinued after Appellant was non-compliant with providing her bank statements to the Community Assistance Office. Ms. Diaz-Cruz explained that a guardianship petition became necessary when Appellant was non-cooperative with community-based services.

At the conclusion of Ms. Diaz-Cruz's testimony, the court decided to continue the hearing for a 30-day period to allow Appellant time to cooperate with her new primary care physician, to adjust her medications, and to cooperate with an agency named Holcomb Behavioral Health Services ("Holcomb") to receive community-based services.

On April 20, 2021, the hearing commenced. The court heard testimony from Thomas Klonis, Esq. The Agency presented testimony from Robert Whited, Director of Holcomb's mobile psychological rehabilitation program.

Appellant presented testimony from Meredith Gable, D.O., Appellant's new primary care doctor and Albert Fombu, M.D., Appellant's treating psychiatrist.

Mr. Klonis testified that he had known Appellant for approximately twenty-five years after representing Appellant in her divorce and trying to help her in various ways. Mr. Klonis informed the court that in the past Appellant was evicted from subsidized housing because of her ongoing hoarding behaviors, that Appellant continued to have transportation issues, but that he believed Appellant could manage her own financial affairs based on his interactions with Appellant.

Mr. Whited testified that Appellant was not compliant with his agency, Holcomb, declined peer support, declined a case manager, failed to show up for appointments, and refused to fill out paperwork for community-based services. Mr. Whited explained that Holcomb is set up to teach the participants to access programs and services for themselves, and that Appellant had not made any progress. Mr. Whited explained that if Appellant did not begin cooperating, she would likely be discharged in a few months.

Dr. Gable, Appellant's new primary care physician, testified that after Appellant's first office visit, she determined that Appellant's "narcotic regimen[] was inappropriate and out of scale to her diagnoses" and referred Appellant to a specialist to wean her narcotics. N.T. Hearing, 4/20/21, at 21. Dr. Gable was unaware if Appellant had followed up with the specialist.

Dr. Fombu, Appellant's psychiatrist, testified that, in his opinion, Appellant was competent to make decisions. Dr. Fombu expressed concern

that Appellant's medications need to be adjusted and Appellant is resistant to that. Dr. Fombu informed the court that he believed Appellant needed community-based services to support her.

On May 4, 2020, the court held its final hearing. The Agency presented testimony from Ms. Diaz-Cruz and Mr. Whited. Appellant presented testimony from Steven Evans, D.O., Appellant's current pain management doctor.

Ms. Diaz-Cruz confirmed that Appellant continued to have transportation issues, partly due to the location of the motel where she lived being inconvenient to public transportation and outside the area of the medical transportation service otherwise available to Appellant. Mr. Whited informed the court that Appellant had not made any progress with Holcomb since the last court date.

Dr. Evans testified that he had been treating Appellant since March 2021 for chronic pain after Appellant's primary care physician referred Appellant to "prevent her from going through withdraw[al] by suspending the medication and then to wean her and switch her to less toxic medications." N.T. Hearing, 5/4/21, at 56. Dr. Evans explained that Appellant is currently prescribed 235 morphine medical equivalents per day, over twice the 90 morphine medical equivalents limit recommended by the state of Pennsylvania. Dr. Evans testified that he needed to see Appellant's radiology imaging before he could make any changes to her medication, but Appellant had failed to arrange for the imaging to be provided to Dr. Evans after two visits with him. Dr. Evans testified that during his interactions with Appellant, she has displayed

- 6 -

"pressured speech" and "not much dialogue, its mostly monologue on her part, which is problematic with the people who are involved in her care[.]" ***Id.*** at 66. Dr. Evans confirmed it would be helpful to have someone in place to help Appellant request her medical records.

Finally, Appellant testified on her own behalf. In sum, she testified that she attends every medical appointment, is looking for improved housing, is cooperative with services, and can manage her own affairs.

At the conclusion of the hearing, the trial court found that the Agency presented clear and convincing evidence that Appellant was an incapacitated person and needed guardianship of her person and estate. Appellant filed a Motion for Reconsideration, which the trial court denied.

Appellant timely appealed. Appellant filed a Pa.R.A.P. 1925(b) Statement and the trial court relied on its June 8, 2021 Opinion and Order in lieu of a Rule 1925(a) Opinion.

Appellant raises the following issues for our review:

A. Did the court err in finding that [Appellant] is an incapacitated person when [the Agency] did not introduce clear and convincing evidence of incapacity?

B. Did the court err in conflating [Appellant']s poverty with an inability to manage financial resources?

C. Did the court err in conflating overmedication, or even addiction, with incapacity?

D. Did the court err by failing to consider substantial evidence of [Appellant]'s ability to access medical care and community supports?

Appellant's Br. at 7.

It is well-settled that "[t]he findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support." *In re Jackson*, 174 A.3d 14, 23 (Pa. Super. 2017) (citation omitted). "This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony." *Id.* (citation omitted). This Court's "task is to ensure that the record is free from legal error and to determine if the [o]rphans' [c]ourt's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence." *Id.* (citation omitted)

Consequently, "[o]ur review of the trial court's determination in a competency case is based on an abuse of discretion standard, recognizing, of course, that the trial court had the opportunity to observe all of the witnesses, including, as here, the allegedly incapacitated person." *In re Hyman*, 811 A.2d 605, 608 (Pa. Super. 2002). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000). Notably, for an appellant to establish an abuse of discretion, it is "not sufficient to persuade the appellate court that it might

have reached a different conclusion under the same factual situation." *Fancsali v. Univ. Health Ctr.*, 761 A.2d 1159, 1162 (Pa. 2000).

Instantly, Appellant avers that the Agency did not present clear and convincing evidence to adjudicate her incapacitated. Appellant's Br. at 7. Appellant argues that the Agency failed to present evidence that Appellant was unable to manage her finances or that her use of medications compromised her ability to receive and evaluate information effectively. *Id.* at 21, 25. Appellant also challenges the weight of the evidence, arguing that the trial court placed too much weight on the Agency's expert witnesses while disregarding the opinions of her treating physicians, and failed to consider that Appellant receives medical and community-based services to meet her needs. *Id.* at 26, 28-30. Appellant's claims do not entitle her to relief.

Under Pennsylvania law, an incapacitated person is "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that [s]he is partially or totally unable to manage [her] financial resources **or** to meet essential requirements for [her] physical health and safety." 20 Pa.C.S. § 5501 (emphasis added). "The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate." 20 Pa.C.S. § 5511(a). A person is presumed to be mentally competent, and the burden is on the petitioner to prove incapacity by clear and convincing evidence. *In Re Myers' Estate*, 150 A.2d 525, 526

(Pa. 1959). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).

Further, when making a determination of incapacity, the court "shall consider and make specific findings of fact concerning:

(1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.

(2) The extent of the individual's capacity to make and communicate decisions.

(3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

(6) The court shall prefer limited guardianship."

20 Pa.C.S. § 5512.1(a)

Here, in its final order, the trial court complied with Section 5512.1 and found that Appellant suffered from conditions or disorders that "impair her cognitive functioning and capacity to receive and evaluate information effectively and to make and communicate sound decisions concerning the management of her living conditions, financial affairs, and physical health and

safety." Final Order, 5/10/21, at ¶3. The court found clear and convincing evidence to adjudicate Appellant incapacitated pursuant to Section 5501 and concluded that Appellant needed a plenary guardian of her person and estate to continue indefinitely until further order of the court.

Upon review, we discern no abuse of discretion. In making its decision, the trial court credited the expert testimony Dr. Callinan who relayed concerns about Appellant's ability to receive information, consider the information, and make reasonable decisions about her healthcare. The court also credited the expert testimony of Dr. Carroll, who opined that Appellant was incapacitated, and submitted an expert psychological report concluding that Appellant was incapacitated and in need of guardianship services. The court also credited testimony from Ms. Diaz-Cruz, who testified that Appellant was non-compliant with community-based services, continued to have issues with transportation, and needed the Agency's financial assistance paying her rent for one month. Mr. Whited confirmed that Appellant remained non-compliant with community-based services, even after the court gave Appellant a chance to comply in the middle of the proceedings.

Notably, Appellant's own witnesses expressed concern about her ability to receive and evaluate information and/or care for herself. Dr. Evans expressed concern that Appellant's inability to engage in dialogue made it difficult to provide medical care and Dr. Fombu explained that Appellant was resistant to necessary reductions in her medication and in need of community-

J-S34014-21

based services.  Finally, the court had the opportunity to observe and interact with Appellant through more than three hearings.  The trial court opined:

> Throughout the course of these multiple proceedings [Appellant] had to be continually chastised by the court and her own attorney to stop shouting at witnesses or speaking over witnesses and the [c]ourt.  [Appellant]'s inability to receive and evaluate information effectively or to meaningfully cooperate with professionals attempting to assist her with vital matters, including medical treatment, safe living conditions, transportation and food, was not only described in detail by virtually every witness[], it was observed first hand by the [c]ourt.

Trial Court Opinion and Order, filed 6/8/21, at 6.

Upon review, we conclude that the record is free from legal error and the trial court's findings are supported by competent and adequate evidence. Appellant essentially asks us to reassess the court's determination of credibility of the witnesses, and to reweigh the testimony and evidence presented during the hearings.  We cannot and will not do so.  Accordingly, Appellant's claims do not garner relief.

In conclusion, the Agency presented clear and convincing evidence to adjudicate Appellant incapacitated and appoint a plenary guardian of her person and estate.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/16/2022

- 12 -