J-S10004-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: DEAN H. KAUFFMAN, SR.  AN ALLEGED INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1300 MDA 2025 |
| | : | |

Appeal from the Order Entered August 22, 2025
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2025-01680

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                          **FILED: MAY 5, 2026**

Appellant, Dean H. Kauffman, Sr., appeals from the August 22, 2025 order entered in the Lancaster County Court of Common Pleas that adjudicated him incapacitated and appointed a guardian for his person and estate.  Appellant challenges the weight and sufficiency of the evidence supporting the court's determination of incapacity.  Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  On June 27, 2025, Penn Medicine Lancaster General Hospital ("Lancaster General") filed an emergency guardianship petition to adjudicate Appellant incapacitated and appoint a plenary guardian for his person and estate.  On July 2, 2025, the orphans' court held an emergency guardianship hearing.  The court heard testimony from, *inter alia*: Connie Koons, M.D., testifying as an expert

qualified to perform capacity evaluations; Pamela Breneman, Esq., a representative of Esteemed Care, LLC ("Esteemed Care"); and Appellant.

Dr. Koons testified that Appellant had been admitted to Lancaster General after the hospital's street medicine team received reports that Appellant was defecating on the walls outside a food bank. Appellant had been homeless for months at the time of his admission. Dr. Koons testified that upon admission, Appellant was paranoid, delusional, disorganized, and displayed a lack of self-care. She testified that Appellant had a long history of schizophrenia and multiple long periods of psychiatric hospitalizations and had required the appointment of a legal guardian in previous years.

Dr. Koons testified that Appellant continues to struggle with schizophrenia and requires various medications but that Appellant does not believe that he is mentally ill or that he needs to take any medications. She opined that if Appellant does not treat his schizophrenia, it will be detrimental to his health as Appellant also has untreated lymphoma, liver cirrhosis, and type 2 diabetes. Dr. Koons explained that Appellant is prescribed over twenty medications and, due to Appellant's poor health at the time of admission, there was evidence that Appellant had not been taking the medications on his own.

Dr. Koons testified that she had examined Appellant on the morning of the hearing in order to perform a capacity evaluation. She testified that Appellant has no insight into the fact that he has a chronic psychotic illness that requires treatment. She opined that Appellant cannot manage his finances, formulate reasonable decisions concerning his health and safety,

give reasonable informed consent for his medical treatment, manage his own personal care or hygiene, or enter into a contract. She opined that Appellant was, therefore, incapacitated under Pennsylvania law and required the appointment of a plenary guardian of his person and estate, without which he would suffer immediate and irreparable harm.

Attorney Breneman testified that Esteemed Care would be willing and able to provide guardian services to Appellant. Appellant testified, *inter alia*, that the doctors were lying about his illnesses, that he was able to manage his own affairs, and that doctors and police were conspiring to place him under guardianship.

At the conclusion of the hearing, the court adjudicated Appellant incapacitated and appointed Esteemed Care as emergency temporary guardian of his person and estate.

On August 19, 2025, the court held a permanent guardianship hearing. The court incorporated the record from the July 2, 2025 emergency guardianship hearing. The court heard testimony from, *inter alia*: Kathryn Stroh, a registered nurse practitioner at Lancaster General testifying as an expert in capacity evaluations; Lisa Godfrey, Appellant's emergency guardian through Esteemed Care; and Appellant.

Ms. Stroh testified that she had performed a capacity assessment on Appellant that morning and concluded that Appellant was incapable of making reasonable decisions concerning his physical health, consenting to medical treatment, operating a motor vehicle, entering a contract, or taking

medication independently. She testified that the conditions impacting his cognition would not improve in the next 12 months and could worsen. She opined that Appellant was, therefore, incapacitated under Pennsylvania law and required the appointment of a plenary guardian of his person and estate.

Ms. Godfrey testified that she had worked to organize Appellant's finances in order to fund his prospective placement at American House Personal Care Home. Appellant again testified that he was able to manage his life and finances and denied that he was suffering from schizophrenia.

On August 22, 2025, the orphans' court adjudicated Appellant a totally incapacitated person and appointed Esteemed Care as permanent plenary guardian of his person and estate. The court specifically found that Appellant lacked the capacity to make decisions due to his untreated schizophrenia and, therefore, required a plenary guardian as no lesser alternative would suffice.

This appeal followed. Appellant and the orphans' court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the [orphans' court] erred by disregarding [Appellant]'s testimony and determining him to be incompetent and in need of guardians of the estate and person?

2. Whether the [orphans' court] erred in ruling that [Appellant] is unable to take care of his daily health and financial responsibilities and therefore needs a guardian of the person and estate[?]

3. Whether the [orphans' court] erred in adopting the opinion that [Appellant] was suffering from schizophrenia to such a degree that he was an incapacitated person in need of both a guardian of the person and of the estate[?]

- 4 -

Appellant's Br. at 13 (reordered for ease of review).

It is well-settled that "[t]he findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support." **In re Jackson**, 174 A.3d 14, 23 (Pa. Super. 2017) (citation omitted). "This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony." **Id.** (citation omitted). This Court's "task is to ensure that the record is free from legal error and to determine if the [o]rphans' [c]ourt's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence." **Id.** (citation omitted).

Consequently, "[o]ur review of the trial court's determination in a competency case is based on an abuse of discretion standard, recognizing, of course, that the trial court had the opportunity to observe all of the witnesses, including, as here, the allegedly incapacitated person." **In re Hyman**, 811 A.2d 605, 608 (Pa. Super. 2002). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." **Harman ex rel. Harman v. Borah**, 756 A.2d 1116, 1123 (Pa. 2000). Notably, for an appellant to establish an abuse of discretion, it "is not sufficient to persuade the appellate court that it might

have reached a different conclusion under the same factual situation." *Fancsali v. Univ. Health Ctr. of Pittsburgh*, 761 A.2d 1159, 1162 (Pa. 2000).

Under Pennsylvania law, an incapacitated person is "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501. "The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate." *Id.* at § 5511(a).

"[A] person is presumed to be mentally competent, and the burden is on the petitioner to prove incapacity by clear and convincing evidence." *Hyman*, 811 A.2d at 608. We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation and internal quotation marks omitted). The court may appoint a plenary guardian only upon finding the person is totally incapacitated and in need of such services. 20 Pa.C.S. § 5512.1(c).

Further, when making a determination of incapacity, the court shall consider and make specific findings of fact concerning:

(1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.

(2) The extent of the individual's capacity to make and communicate decisions.

(3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of less restrictive alternatives. The court shall make specific findings of fact based on the evidentiary record of the absence of sufficient family, friends or other supports and of the insufficiency of each less restrictive alternative before ordering guardianship. . . .

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

(6) The court shall prefer less restrictive alternatives to guardianship and, if no less restrictive alternatives are available and sufficient, limited guardianship. . . .

*Id.* § 5512.1(a).

Appellant presents the same argument in his first two issues and we, thus, address them together. Appellant asserts that he is not incapacitated and, alternatively, that even if he is incapacitated, he is not in need of a guardian because he has the ability to meet his own needs. Appellant's Br. at 21, 27-28. Appellant argues that the orphans' court ignored Appellant's testimony that he "had been able to function in society from early 2022, without incident and apparently without taking any psychotropic medicine[,] had shared an apartment for a time[,] received social security payments[,

- 7 -

and] found sufficient food" despite being homeless. *Id.* at 21-22. Essentially, Appellant challenges the court's determination regarding the weight of the evidence and Appellant's credibility.

The orphans' court found that "testimony from the emergency guardianship hearing [] and the permanent guardianship hearing [] unequivocally proves that the Appellant is incapacitated and the appointment of a guardian is essential to the Appellant's survival" as "Dr. Koons authoritatively testified that the Appellant is schizophrenic and that his schizophrenia completely nullifies his ability for self-care." Orphans' Ct. Op., 11/18/25, at 41-42. The court was "entirely unpersuaded by the testimony of the Appellant that he is capable of managing his finances or his daily living." *Id.* at 42.

Our review of the record demonstrates that the orphans' court thoroughly reviewed Dr. Koons's and Ms. Stroh's expert testimony along with Appellant's own testimony regarding his ability to manage his affairs. The court found the expert testimony credible and authoritative and found that Appellant's testimony only reinforced the observations of the other witnesses regarding his lack of insight and inability to make decisions in his own best interests. *Id.* at 42-43. We decline to reweigh the evidence or overturn the trial court's credibility determination. We, therefore, find that the evidence fully supported the orphan's court conclusion that Appellant was incapacitated and required the appointment of a plenary guardian.

Next, Appellant asserts that the orphans' court erred in finding him incapacitated because many people do not follow medical advice and "[n]ot every person with a diagnosis that is ignored [is] incapacitated and unable to function in society[.]" Appellant's Br. at 26. Appellant argues that the mere fact that he "refuses to acknowledge a diagnosis or refuse[s] medications" does not necessarily mean that Appellant is "impaired such that he [is] unable to care for himself," pointing to Dr. Koons's testimony that "a large part of people who have schizophrenia [] live in the community and never access any treatment[.]" *Id.* at 25-26 (citing N.T. Hr'g, 7/2/25, at 8).[1] Essentially, Appellant argues that the evidence was insufficient to support the court's finding of incapacity.

The court found that there was clear and convincing evidence of Appellant's incapacity, highlighting Appellant's homelessness, inability to manage his finances, and inability to manage his serious medical conditions. Orphans' Ct. Op. at 43-44. The court stated that it "considered whether any less restrictive alternatives would suffice . . . and concluded that such alternatives would be inadequate to protect the Appellant." *Id.* at 44.

Our review of the record reveals that there is clear and convincing evidence supporting the court's finding of total incapacity. Lancaster General presented credible expert testimony that, due to his untreated schizophrenia,

---

[1] Appellant also repeats his argument that the court erred in dismissing Appellant's testimony regarding his ability to manage his own affairs. We have addressed and dismissed this argument *supra*.

Appellant is incapable of making reasonable decisions concerning his physical health, consenting to medical treatment, operating a motor vehicle, entering a contract, or taking medication independently.

Further, in issuing its findings, the court considered and made specific findings of fact regarding the required elements of 20 Pa.C.S. § 5512.1(a) and eliminated any less-restrictive alternatives to plenary guardianship as insufficient. *See* Order, 8/22/25, at 4-6. The court found, *inter alia*, that: Appellant's untreated schizophrenia impairs his ability to receive and evaluate information and to make intelligent decisions regarding his medical care and finances, Appellant is not able to live in the community without oversight and requires 24-hour care and supervision, Appellant does not have agents in place willing to manage his healthcare or finances, and Appellant is completely impaired with respect to numerous functions so less-restrictive alternatives to a plenary permanent guardian are insufficient and infeasible. *See id.* at 4-5.

Based on our review of the record, we conclude that sufficient clear and convincing evidence supports the orphans' court's findings of fact and its determination is free of legal error. Accordingly, we affirm the court's order adjudicating Appellant incapacitated and appointing a plenary guardian.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>05/05/2026</u>