J-A21019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KIMBERLY BOLDEN-JOHNSON, INDIVIDUALLY AND AS THE ADMINISTRATRIX OF THE ESTATE OF JOHN CALVIN JOHNSON, DECEASED | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 2249 EDA 2021 |
| AGATE CONSTRUCTION COMPANY, INC., JOHNSTON ENTERPRISES, PHILAPORT; PHILADELPHIA REGIONAL PORT AUTHORITY | : : : : : : | |
| v. | : : : | |
| ATLANTIC CONCRETE CUTTING, INC. | : : | |
| _____ | : | |
| KIMBERLY BOLDEN-JOHNSON, INDIVIDUALLY AND AS THE ADMINISTRATRIX OF THE ESTATE OF JOHN CALVIN JOHNSON, DECEASED | : : : : : : | |
| v. | : : : | |
| AGATE CONSTRUCTION COMPANY, INC., JOHNSTON ENTERPRISES, PHILAPORT, PHILADELPHIA REGIONAL PORT AUTHORITY, PENN WAREHOUSING AND DISTRIBUTION, INC., JH STEVEDORING, PHILADELPHIA FOREST PRODUCTS CENTER | : : : : : : : : : | |
| _____ | : | |
| KIMBERLY BOLDEN-JOHNSON, INDIVIDUALLY AND AS THE ADMINISTRATRIX OF THE ESTATE OF JOHN CALVIN JOHNSON, DECEASED | : : : : | |

J-A21019-22

```
                                            :
                                            :
                                            :
            v.                              :
                                            :
                                            :
                                            :
  COLUMBUS AVENUE GPD INVESTMENT            :
  LP, COLUMBUS AVENUE                       :
  INVESTMENTS, LLC, G.P.                    :
  DEVELOPMENT CORPORATION,  IVAN            :
  POPKIN, ROBERT A. GOLDENBERG,             :
  NEW AGE FASTENING SYSTEMS, INC.           :
  NEW AGE RESTORATION, NEW AGE              :
  CORPORATION                               :
                                            :
                                            :
                                            :
  APPEAL OF:  AGATE CONSTRUCTION            :
  COMPANY, INC.                             :
```

Appeal from the Judgment Entered November 8, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  180101066, 180102308, 180502228

BEFORE:  LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED SEPTEMBER 30, 2022**

Agate Construction Company, Inc. (Appellant), appeals from the

judgment[1] entered against Appellant and in favor of Atlantic Concrete Cutting,

_____

[1] Appellant purports to appeal from the September 17, 2021, order denying
post-trial relief.  "An appeal from an order denying post-trial motions is
interlocutory.  Pa.R.A.P. 301(a), (c), and (d)[.]  Once that judgment is entered
however, our jurisdiction is perfected." ***Keystone Dedicated Logistics, Inc.
v. JGB Enters.***, 77 A.3d 1, 2 n.1 (Pa. Super. 2013) (some citations, ellipses,
and brackets omitted); ***see also Billig v. Skvarla***, 853 A.2d 1042, 1048 (Pa.
Super. 2004) (where "nonsuit was entered, the appeal properly lies from the
judgment entered after denial of a motion to remove nonsuit.").  The docket
in this case reflects that judgment was entered on November 8, 2021.  ***See***
Docket Entry No. 245 (stating, "judgment entered on verdict" (capitalization
omitted)).  We amended the caption accordingly.  Further, we treat Appellant's
*(Footnote Continued Next Page)*

- 2 -

Inc. (Atlantic or Atlantic Concrete), in this contractual indemnification case.

We affirm.

The trial court recounted the relevant factual and procedural history as

follows:

This indemnification action arises out of plaintiff Kimberly Bolden-Johnson's [(Ms. Bolden-Johnson or plaintiff)] action against [Appellant] and a number of other defendants to recover damages for the death of her husband, John Johnson. Mr. Johnson, an employee of Atlantic, drowned on January 14, 2016[,] while working on Pier 78 on the Delaware River in Philadelphia. Philadelphia Regional Port Authority ("PRPA") owns Pier 78. PRPA entered into a contract with [Appellant], as the general contractor, to renovate the pier, including the selected demolition of the deteriorated portions of the pier's concrete walking surface.

To complete this work, [Appellant] entered into a subcontract with Atlantic (the "Subcontract"), pursuant to which Atlantic was tasked with cutting concrete at the pier. The Subcontract contained an indemnification clause [(indemnity provision)], under which the subcontractor[,] Atlantic[,] agreed to indemnify the general contractor[, Appellant]. It provides[, in pertinent part]:

To the full extent permitted by law, the Subcontractor agrees to defend, indemnify and hold harmless the Contractor and the Owner, and their respective officers, agents and employees and any other person or entity required by the Contract Documents ("Indemnified Parties") from and against any and all Losses arising from or relating to Work performed by the Subcontractor on the Project, whether or not the Contractor was negligent, unless the Contractor was solely negligent.

---

timely notice of appeal as being filed after the entry of judgment. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

(Subcontract[, 11/25/15,] at 7).[2]   With leave of court, [Appellant] filed a joinder complaint against Atlantic on October 22, 2018, demanding indemnification pursuant to the Subcontract.

On September 3, 2019, [Appellant] filed a summary judgment motion arguing that it was a statutory employer of Mr. Johnson and therefore immune from suit under the Pennsylvania Worker's Compensation Act. [*See McDonald v. Levinson Steel Co.*, 153 A. 424, 425-26 (Pa. 1930) (discussing statutory employer); 77 P.S. § 462.]  **In support of the summary judgment motion,** [**Appellant**] **admitted**:

1.  PRPA owned Pier 78. ([Motion, 9/3/19,] at ¶ 1.)

2.  PRPA entered into a contract with [Appellant] as the general contractor [(Prime Contract)] to perform renovations to Pier 78. (*Id.* at ¶¶ 2 and 28.)

3.  The Prime Contract included "the replacement of deteriorated concrete along the loading dock surface, leading dock wall rail deck, and seawall in addition to spall repairs on the barrier and apron surface." (*Id.* at ¶ 58 (quoting Prime Contract.))

4.  The Prime Contract called for the cutting of concrete surfaces. (*Id.* at ¶ 60.)

5.  [Appellant] entered into a [S]ubcontract with Atlantic to perform the concrete cutting work at the pier. (*Id.* at ¶ 30.)

6.  As the general contractor, [Appellant] was on the site daily and occupied the area of the pier where work was performed and oversaw the work performed by all contractors. (*Id.* at ¶¶ 6 and 45.)

7.  Mr. Johnson was a direct employee of Atlantic, [Appellant's] subcontractor. (*Id.* at ¶ 20.)

---

[2] The Subcontract also included a provision (choice of law provision) that states:  "This Subcontract shall be governed by and construed in accordance with the laws of the State of New Jersey…."  Subcontract, 11/25/15, ¶ 26.9.

8.  [Appellant] maintained an office on site on Pier 78. (*Id.* at ¶ 44.)

9.  [Appellant] coordinated the work of all subcontractors. (*Id.* at ¶ 46.)

10. [Appellant] conducted meetings and inspections onsite at the pier. (*Id.* at ¶ 47.)

11. [Appellant] wrote up violations of subcontractors. (*Id.* at ¶ 48.)

12. [Appellant] was on site daily and oversaw the work performed by all contractors. ([*Id.*] at ¶ 6[.)]

Ms. Bolden-Johnson contested the summary judgment motion, while Atlantic did not oppose summary judgment to [Appellant] on the statutory employer theory. **The Court denied the summary judgment motion** on October 31, 2019. **Ms. Bolden-Johnson subsequently settled the case with [Appellant] for $10.5 million, and [Appellant] pursued its indemnification claim against Atlantic**.

The Court heard a bench trial on [Appellant's] indemnification claim against Atlantic on May 10 and 11, 2021. …

At trial, [Appellant] presented the testimony of Kevin Durkan, plaintiff Kimberly Bolden[-]Johnson's attorney in this matter. Mr. Durkan testified that he produced [Ms. Bolden-Johnson] for deposition, took 12 to 13 depositions, including all the individuals who were at Pier 78 on the night of Mr. Johnson's death, and hired an expert on construction safety. Mr. Durk[a]n testified that "in September of 2015, [] PRPA had hired [Appellant] to rehabilitate Pier 78 including the selected demolition of the deteriorated portions of the pier's concrete walking surface." According to Mr. Durk[a]n, the contract between [] PRPA and [Appellant] required [Appellant] to cover the openings that were cut into the concrete and appoint a competent superintendent to continuously monitor for safety. Furthermore, "[Appellant] had submitted a site-specific health and safety plan for the project, which was approved by the PRPA." [Appellant's] [S]ubcontract with Atlantic provided that "[Appellant] had the responsibility to cover the holes that were cut into the concrete." [Durkan]

- 5 -

testified that, when performing the work at Pier 78, [Appellant] would mark the area of concrete for Atlantic to cut; Atlantic would cut the concrete; and then [Appellant] would lift the concrete, using a crane and creating a hole. Before the close of [Appellant's] case, the parties agreed to submit designations and counter-designations of the depositions of Atlantic and [Appellant] employees for the Court's consideration. Atlantic's counter-designations included the deposition of Atlantic employee Eric Burr, who testified that [Appellant] "ran the job" at Pier 78.

At the close of [Appellant's] case, **Atlantic [orally] moved for a compulsory nonsuit. The Court granted Atlantic's motion on the grounds that [Appellant] had failed to prove that Ms. Bolden-Johnson had a valid claim against it**. On May 21, 2021, [Appellant] filed a motion for post-trial relief, seeking: (1) removal of the compulsory non-suit in Atlantic's favor; (2) entry of a directed verdict in its favor; and/or (3) a new trial. The Court denied all post-trial relief, with the exception of amending its [written] finding[s] and conclusions to reflect [entry of a] nonsuit instead of a directed verdict.

Trial Court Opinion, 12/16/21, at 2-6 (emphasis and footnote 2 added; citations to record and one footnote omitted); *see also id.* at 6 n.2 (explaining the trial court "orally granted Atlantic's [post-trial] motion at a hearing following the close of [Appellant's] case. On May 25, 2021, the Court filed [] findings and conclusions and a trial worksheet, in which it erroneously stated that it granted a "directed verdict" instead of a "nonsuit." Subsequently, [on September 17, 2021,] the Court filed amended findings and conclusions and an amended trial worksheet to reflect [entry of a] "nonsuit" instead of a "directed verdict.").

Appellant timely filed a notice of appeal on October 15, 2021. The single notice of appeal contained multiple trial court docket numbers, *i.e.*,

180101066 (Docket 1066), 180102308, and 180502228 (Docket 2228).[3] The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied on November 8, 2021.

The trial court issued a Pa.R.A.P. 1925(a) opinion on December 16, 2021, rejecting Appellant's challenge to, *inter alia*, the entry of nonsuit, and reasoning:

> To establish its indemnification claim, [Appellant] had the burden of proving:
>
>> the scope of the indemnification agreement; the nature of the underlying claim; its coverage by the indemnification agreement; the reasonableness of the alleged expenses; and, where the underlying action is settled rather than resolved by payment of a judgment, **the validity of the underlying claim** and the reasonableness of the settlement.
>
> ***Burlington Coat Factory of Pennsylvania, LLC v. Grace Const. Mg[m]t. Co., LLC***, 126 A.3d 1010, 1022 (Pa. Super. 2015) [(*en banc*) (citation omitted) (emphasis added); ***see also Cty. of Del. v. J.P. Mascaro & Sons, Inc.***, 830 A.2d 587, 593 (Pa. Super. 2003) ("To establish a right to indemnification where a case is resolved by settlement, the party must establish," *inter alia*, "that the underlying claim was valid against it").]
>
> [Appellant] failed to establish that Ms. [Bolden-]Johnson had a valid claim against it. Under Pennsylvania's Worker[s'] Compensation Act, [77 P.S. § 1, *et seq.*,] an employer is immune from tort liability for an employee's personal injury if it meets the five elements for a "statutory employer" set out in ***McDonald v. Levinson Steel Co.***, 153 A. 424, 426 (Pa. 1930):

---

[3] The caption of the notice of appeal stated, "consolidated under lead action," which, Appellant claimed, was Docket 1066.

(1) An employer who is under contract with an owner or one in the position of an owner; (2) premises occupied by or under the control of such employer; (3) a subcontract made by such employer; (4) part of the employer's regular business entrusted to such subcontractor; (5) an employee of such subcontractor.

After the end of [Appellant's] case-in-chief, the record contained uncontested evidence that [Appellant] met all five elements of the **McDonald** test.

First, the evidence submitted at trial showed that PRPA, the owner of Pier 78, entered into a contract with [Appellant], the general contractor. The Subcontract between [Appellant] and Atlantic identifies PRPA as the owner of Pier 78, and [Appellant] as the contractor. Moreover, the Subcontract references the [P]rime [C]ontract for the project between PRPA and [Appellant]. Mr. Durkan also testified that PRPA entered into a contract with [Appellant], as the general contractor, to renovate Pier 78. Finally, [Appellant] admitted that it entered into a contract with PRPA in its motion for summary judgment.

Second, the evidence submitted by [Appellant] established that it occupied and controlled the premises in question. Mr. Durkan testified that [Appellant] directed Atlantic's performance of the work at Pier 78 by marking the area of concrete for Atlantic to cut, which Atlantic would then cut. Moreover, in its motion for summary judgment[, Appellant] admitted that it maintained an office on the site; its supervisors were on the site every day; it coordinated the work of the subcontractors; it conducted meetings and inspections on the site; and it wrote up subcontractor violations. According to Mr. Durkan, [Appellant] agreed with PRPA to hire a competent superintendent to continuously monitor for safety. Furthermore, "[Appellant] had submitted a site-specific health and safety plan for the project, which was approved by the PRPA."

[Appellant] entered into a subcontract with Atlantic, which satisfies the third [**McDonald**] element. The fourth element is that a portion of the employer's business be entrusted to the subcontractor. In this matter, the Subcontract called for Atlantic to cut concrete on the pier, a necessary activity to allow for the renovation work of the [P]rime [C]ontract to proceed. The final element of the statutory employer test is that the subcontractor

- 8 -

employ the employee. In this case, there is no dispute that Mr. Johnson was an Atlantic employee.

Since the five elements of a "statutory employer" were established at the end of [Appellant's] case, the Court did not err in holding that [Appellant] was a "statutory employer" and thus Atlantic had no obligation to indemnify [Appellant] for the settlement payment.

Trial Court Opinion, 12/16/21, at 11-13 (record citations omitted). The court also stated, with respect to the "import" of its October 31, 2019, denial of Appellant's motion for summary judgment:

All the [c]ourt decided in October 2019 is that, in the face of Ms. Bolden-Johnson's opposition, **material issues of fact existed** regarding the statutory employer defense, namely, whether PRPA owned the pier; [Appellant] exercised sufficient occupancy or control of the premises; Atlantic was a subcontractor notwithstanding an independent contractor clause in the [S]ubcontract; a portion of [Appellant's] regular business was entrusted to Atlantic; and Mr. Johnson was the employee of a subcontractor, notwithstanding the independent contractor clause in the [S]ubcontract. **At the time of trial, [Appellant] had admitted to all these facts, and the [c]ourt properly held it to these admissions.** *Cogley v. Duncan*, 32 A.3d 1288, 1292 (Pa. Super. 2011) ("Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions and are binding on the party.")[ (citation omitted).] **This includes [Appellant's] admissions at trial establishing that [Appellant] was Mr. Johnson's statutory employer**.

*Id.* at 13 (emphasis added) (rejecting Appellant's claim that "denial of summary judgment on the statutory employer issue constitutes the law of the case and precludes the [trial c]ourt from granting Atlantic's motion for a compulsory nonsuit." (citation omitted)).

On December 29, 2021, this Court issued a Rule for Appellant to show cause (RTSC) why we should not quash the appeal based on ***Commonwealth v. Walker***, 185 A.3d 969, 971 (Pa. 2018) ("where a single order resolves issues arising on more than one docket, **separate notices of appeal must be filed** for each of those cases" or the appeal will be quashed) (emphasis added).[4] ***See also*** Pa.R.A.P. 341, note; ***In re: M.P.***, 204 A.3d 976, 980-81 (Pa. Super. 2019) (stating ***Walker*** also applies in civil and family cases). In the RTSC, we also cited ***Always Busy Consulting, LLC v. Babford & Co., Inc.***, 247 A.3d 1033, 1043-44 (Pa. 2021) (holding that filing one notice of appeal from single order entered at lead docket for "consolidated civil matters where all record information necessary to adjudication of the appeal exists, and which involves identical parties, claims and issues, does not run afoul of ***Walker*** [or] Rule 341"). Appellant filed a timely response, claiming its notice of appeal was not defective and complied with ***Always Busy***:

> The underlying matter involved three separate lawsuits arising from the same incident that were consolidated at the trial court level during the course of the litigation. Those three cases involved over fifteen named parties and a number of claims. **All but two parties were dismissed prior to appeal** (Appellant [] and Appellee Atlantic Concrete), **and all issues on appeal are exclusive to [Appellant's] claims against Atlantic Concrete for contractual indemnification**[.]

---

[4] The Pennsylvania Supreme Court overruled ***Walker***, in part, in ***Commonwealth v. Young***, 265 A.3d 462, 477-78 (Pa. 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when a single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate courts to consider an appellant's request to remedy a ***Walker*** violation, where appellant timely filed the notice of appeal).

Response, 1/10/22, at 2 (unnumbered) (emphasis added). Appellant asserted the trial court's rulings "were entered exclusively on the lead docket and involved only claims by [Appellant] against Atlantic Concrete." *Id.* (referencing Docket 1066). On January 20, 2021, this Court discharged the RTSC and referred the matter to the merits panel. Thus, we first address whether we have jurisdiction to consider Appellant's issues.

Our review of the record confirms Appellant's claim that its single notice of appeal complied with **Always Busy** and did not violate **Walker**. As stated above, although this matter began as three separate cases, the trial court consolidated the cases under Docket 1066 (**see** Order, 4/27/18); all defendants aside from Atlantic and Appellant are no longer involved in the litigation;[5] and Appellant correctly states, "[t]his appeal does not involve any other claims, parties, or interests," aside from those implicating Atlantic and Appellant. Response, 1/10/22, at 11 (unnumbered); **see also** Appellant's Reply Brief at 6 ("There was no improper consolidation of multiple appellate issues or parties. Indeed, the issues on appeal arose only from [Appellant's]

_____

[5] We are unpersuaded by Atlantic's argument that quashal is necessary because "[Dockets] 1066 and 2228 do not involve identical parties or claims[, where] four additional defendants were named in the latter case. Therefore, the **Always Busy** exception does not apply." Atlantic's Brief at 7. The other defendants are no longer involved in the case. Further, there is no merit to Atlantic's claim that Appellant's appeal "attempted an impermissible consolidation in this Court…." **Id.**

claim against Atlantic Concrete, which arises exclusively from Docket 1066.").

Accordingly, we decline to quash under *Walker*.

Appellant presents three issues for our review:

1. Did the Trial Court err in granting Atlantic Concrete's oral motion for compulsory nonsuit?

   a. Did the Trial Court err in neglecting to apply New Jersey law pursuant to the [S]ubcontract between [Appellant] and Atlantic Concrete?

   b. Did the Trial Court err in finding that the claim against [Appellant] was not valid?

   c. For the purposes of [Appellant's] contractual indemnification claim against Atlantic Concrete, did the Trial Court err in evaluating the validity of plaintiff Kimberly Bolden-Johnson's claim against [Appellant] at the time of Atlantic Concrete's motion for compulsory nonsuit, rather than at the time of [Appellant's] settlement with plaintiff?

2. Did the Trial Court err in determining that statements made in [Appellant's] motion for summary judgment were judicial admissions warranting entry of compulsory nonsuit?

3. Did the Trial Court act in contravention to Pennsylvania public policy of encouraging the settlement of lawsuits when it granted Atlantic Concrete's motion for compulsory nonsuit?

Appellant's Brief at 4-5.

Preliminarily, we note Appellant's noncompliance with Pa.R.A.P. 2119(a), which requires the argument section of an appellate brief to

> be **divided into as many parts as there are questions to be argued**; and shall have at the head of each part - in distinctive type … - the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

- 12 -

***Id.*** (emphasis added). Appellant's argument section headings do not correspond to its issues. Although this defect has complicated our review, we address the merits of Appellant's issues as presented. ***See*** Pa.R.A.P. 105(a) (requiring liberal construction of appellate rules); ***but see Commonwealth v. Briggs***, 12 A.3d 291, 343 (Pa. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted[.]").

Appellant's first issue (and related sub-issues) challenges the trial court's entry of nonsuit in favor of Atlantic. ***See*** Appellant's Brief at 33-60; ***see also*** Appellant's Reply Brief at 33 (Appellant clarifying its "central contention" is whether "the trial court erred in granting nonsuit for Atlantic Concrete, as the trial court incorrectly ruled that plaintiff did not have a valid claim against [Appellant]." (some capitalization omitted)). Pursuant to Pa.R.C.P. 230.1(a)(1), a court may enter a nonsuit "if, at the close of the [non-moving party's] case on liability, the [non-moving party] has failed to establish a right to relief." ***Id.***

We recognize our standard of review:

Nonsuit should not be granted unless it is clear that the [non-moving party] has not established a cause of action or any right to relief against the party in question. When we determine if the [non-moving party] has established the right to recover, the [non-moving party] must be allowed the benefit of all favorable evidence and reasonable inferences arising therefrom, and any

- 13 -

conflicts in the evidence must be resolved in favor of the [non-moving party]. This Court will reverse an order refusing to remove a nonsuit if the trial court either abused its discretion or committed an error of law.

***Scampone v. Grane Healthcare Co.***, 169 A.3d 600, 611 (Pa. Super. 2017) (citations and quotations omitted); ***see also MB Fin. Bank v. Rao***, 201 A.3d 784, 788 (Pa. Super. 2018) ("When a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement." (citation omitted)). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Parr v. Ford Motor Co.***, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*) (citations omitted); ***see also Fancsali v. Univ. Health Ctr.***, 761 A.2d 1159, 1162 (Pa. 2000) ("When the trial court reaches a conclusion calling for the exercise of its discretion, the party complaining on appeal has a heavy burden.").

We first address Appellant's claim, in connection with its first issue, that, "the trial court should have applied New Jersey law to the claim for indemnification as required by the parties' contract." Appellant's Brief at 39; ***see also id.*** at 40 (citing above choice of law provision – Subcontract, 11/25/15, ¶ 26.9). Appellant asserts,

the Trial Court erred by trying to evaluate [Appellant's] **actual liability** following [Appellant's] case-in-chief at the bench trial. New Jersey law does not require that the Trial Court reach a decision on the merits in order to evaluate [Appellant's] potential liability in the context of a claim for contractual indemnification.

- 14 -

[Appellant] need only show that it "faced **potential liability**" for the claims underlying the settlement.

*Id.* at 49 (emphasis added; footnote omitted) (quoting ***Serpa v. New Jersey Transit***, 951 A.2d 208, 213 (N.J. App. Div. 2008) (A party may be indemnified for settlement payments it makes where three requirements are met: "(a) the indemnitee's claims are based on a valid, pre-existing indemnitor/indemnitee relationship; (b) the indemnitee faced **potential liability** for the claims underlying the settlement; and (c) the settlement amount was reasonable.") (emphasis added; citation omitted)); ***but cf. Burlington Coat Factory***, 126 A.3d at 1022 (to establish an indemnification claim in Pennsylvania, a settling party has the burden of proving, *inter alia*, the "validity of the underlying claim").

Atlantic counters that Appellant waived this claim, stating:

The only aspect of New Jersey law [Appellant] specifically discusses is an alleged "potential liability" standard, which (according to [Appellant]) the trial court should have applied instead of Pennsylvania's "valid claim" standard. … [Appellant] waived any argument that New Jersey law applies to the statutory employer analysis[.]

Atlantic's Brief at 34 (footnote and citation omitted). Atlantic contends that because Appellant

never referenced New Jersey law in responding to Atlantic's nonsuit motion based on statutory employer immunity, and certainly never raised the alleged "potential liability" standard at any time during trial, its current argument is clearly waived. ***See*** Pa.R.C.P. 227.1(b)(1) [(providing in relevant part, "post-trial relief may not be granted unless the grounds therefor … were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of

- 15 -

proof or other appropriate method at trial")]; ***Young*** [***v. S. B. Conrad, Inc.***], 216 A.3d [267], 274-275 [(Pa. Super. 2019)] (finding waiver because plaintiff "did not bring his claims of procedural error to the [trial] court's attention until **after** he had lost the [nonsuit] motion.") [(emphasis in ***Young***).]

Atlantic's Brief at 36.

Consistent with this argument, the trial court found waiver. ***See*** Trial Court Opinion, 12/16/21, at 10 (citing Pa.R.C.P. 227.1(b)(1), ***supra*** and noting Appellant "did not raise the choice of law issue when Atlantic moved for a nonsuit. In fact, [Appellant] cited Pennsylvania law to support its position[.]" (citations omitted)); ***see also id.*** ("the [c]ourt did not err in applying Pennsylvania law because it decided Atlantic's nonsuit on [] statutory employer grounds," and observing, "[p]er [Appellant's] own admission, Pennsylvania law governed the statutory employer issue." (citing Motion for Summary Judgment, 9/3/19, at ¶¶ 20-78)). Upon review, we agree. ***See***, ***e.g.***, ***Trigg v. Children's Hosp. of Pittsburgh***, 229 A.3d 260, 269 (Pa. 2020) ("[I]t is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). … Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." (some citations omitted)).

Appellant further argues, in connection with its first issue, that the trial court improperly failed to hold that an express provision of the Subcontract

"preclude[s] the statutory employer defense as a bar to [Appellant's] recovery for contractual indemnification[.]" Appellant's Brief at 35 (bold and some capitalization omitted). Appellant references Article 8.1, which provides, "[Atlantic's] indemnity obligations under this paragraph shall not be limited by applicable worker's compensation acts…." Subcontract, 11/25/15, at ¶ 8.1; *see also* Appellant's Brief at 35. However, Appellant also waived this claim for failing to raise it before the trial court. Pa.R.A.P. 302(a); Pa.R.C.P. 227.1(b)(1); **Young**, **supra**; **see also U.S. Bank, N.A. v. Hua**, 193 A.3d 994, 997 (Pa. Super. 2018) (where appellant failed to raise claim in court-ordered Pa.R.A.P. 1925(b) statement, omission "will result in **automatic waiver** of the issues raised." (emphasis in original; citation omitted)); Pa.R.A.P. 1925(b)(4)(vii).

Next, we simultaneously address Appellant's remaining, preserved claims in its first issue, with the related claims in Appellant's second issue. Appellant argues the trial court improperly entered nonsuit against Appellant, where the court,

> should have evaluated plaintiff's claims against [Appellant] in the context of the underlying matter where, **in rejecting [Appellant's] statutory employer defense at the summary judgment stage, the Trial Court confirmed [Appellant] *could be held liable* for plaintiff's claims**. … When a party is seeking contractual indemnification to recover a settlement in the underlying matter, the Trial Court should not determine whether actual liability exists at the time of trial on the indemnification claim. Instead, the evaluation of the potential liability of [Appellant] or the validity of plaintiff's claim against [Appellant] should have been applied to the time [Appellant's] claim for contractual indemnification arose – when plaintiff settled its claim

against [Appellant], after summary judgment on the statutory employer defense was denied by the same judge.

Appellant's Brief at 31 (emphasis added). Appellant maintains, "in the context of a claim for contractual indemnification, … [no] Pennsylvania case instructs the lower courts **when** they should evaluate the validity of plaintiff's claim against the party seeking indemnity." *Id.* at 53 (emphasis in original).

Appellant further argues the trial court abused its discretion in finding that plaintiff's claim against Appellant was not valid. *See id.* at 51-56; *see also Burlington Coat Factory*, 126 A.3d at 1022 (discussing "valid claim" requirement to establish an indemnification claim after a settlement payment). Referencing the trial court's denial of its motion for summary judgment, Appellant contends,

> **determining that a claim is valid enough to submit it to a jury is enough to create a "valid claim" by plaintiff against [Appellant], for purposes of contractual indemnity**. After [Appellant's] motion for summary judgment was denied in October 2019, no new evidence was introduced on the issue of [Appellant's] status as ? statutory employer at the bench trial.

*Id.* at 54-55 (emphasis added); *see also id.* at 55 ("The same material issues of fact on the factual issues presented in a statutory employer defense that were identified by the Trial Court[, *i.e.*, in denying Appellant's summary judgment motion,] remained in existence when [Appellant] and plaintiff settled their claim." (quotations omitted)). Appellant emphasizes the Subcontract's inclusion of the indemnity provision, and contends,

> Atlantic Concrete promised to indemnify [Appellant] for "all" claims arising from or relating to Atlantic Concrete's work. Under

- 18 -

the Trial Court's decision, however, Atlantic Concrete has to indemnify [Appellant] only when a plaintiff's claim against [Appellant] is "valid." That is a sweeping, improper judicial rewrite of the parties' agreement.

*Id.* at 59.

In its second issue, Appellant argues the trial court "erred in concluding that statements made by [Appellant] in its motion for summary judgment were judicial admissions warranting entry of compulsory nonsuit[.]" *Id.* at 60 (bold and some capitalization omitted).[6] Appellant contends:

It cannot be said that [Appellant's] statements in its motion for summary judgment were unequivocally admitted or conclusively binding where the statements were genuinely disputed by plaintiff and viewed with such uncertainty by the Trial Court that it denied [Appellant's] motion for summary judgment.

*Id.* at 63. Appellant complains, "it was unfair for the trial court to reject [Appellant's] statements when contained in a motion for summary judgment …, only to reverse itself when considering a motion for compulsory nonsuit…."

*Id.* at 61 (some capitalization omitted).

Atlantic, on the other hand, argues:

[I]ndemnification language does not impose absolute liability and is not self-effectuating; its application in a particular case must be proven by the indemnitee as the moving party. And, when the indemnitee settles the underlying claim, which precludes fact-finding that is necessary to determine whether the indemnification language applies, decades of Pennsylvania law impose an elevated burden of proof on the indemnitee. In this Court's leading decision on the subject, it explained:

---

[6] The trial court did not address this claim in its Pa.R.A.P. 1925(a) opinion. *But see* Appellant's Rule 1925(b) Statement, 11/8/21, ¶ 9 (preserving claim).

> [W]hen a cause is settled, the record of the action is not sufficient to establish an indemnitee's claim against the indemnitor and the indemnitor is entitled to a trial by jury and a determination by it **as to whether or not liability did, in fact, exist** …. The fact of voluntary payment does not negat[e] the right to indemnity. **It merely varies the degree of proof needed to establish the liability of the indemnitor.**
>
> ***Martinique Shoes v. New York Progressive Wood Heel Co.***, 217 A.2d 781, []783 (Pa. Super. 1966) (emphasis added; citations omitted).
>
> [Appellant] never addresses or even acknowledges that its decision to settle fundamentally altered its burden of proof and required it to establish that the settled claim was valid — *i.e.*, that its liability "did, in fact, exist." ***Id.*** [Appellant's] statutory employer immunity, which it no longer disputes, is not merely a "defense," as [Appellant] claims. It is a nonwaivable abrogation of tort liability, which deprives courts of subject matter jurisdiction and renders them incompetent to even consider tort claims. ***Sheard v. J.J. DeLuca***, 92 A.3d 68, 75-78 (Pa. Super. 2014). Thus, plaintiff's underlying claim against [Appellant] was not valid, liability did not in fact exist, and indemnification would be improper as a matter of law. ***See Fox Park Corp. v. James Leasing Corp.***, 641 A.2d 315, 317 (Pa. Super. 1994) ("Fox need not indemnify Robinson's settlement payments if Robinson was never liable to anyone in the first place.").
>
> [Further], the denial of summary judgment did not, as [Appellant] claims, "reject" statutory employer immunity or "establish" the validity of Plaintiff's claim. Brief for Appellant, p. 54. As the trial court found, [Appellant's] argument misapprehends the import of a summary judgment denial, [***see*** Trial Court Opinion, 12/16/21, at 13, ***supra***,] which does not accept, reject, or establish any legal position, but simply allows claims and defenses to proceed to trial.

Atlantic's Brief at 2-3. Atlantic also argues, contrary to Appellant's assertion

that the trial court should have evaluated the "validity" of plaintiff's claims

after the denial of Appellant's summary judgment motion, that Pennsylvania Rule of Civil Procedure 230.1,

> clearly states that the relevant time for considering a nonsuit motion is "at the close of the plaintiff's case on liability," and the relevant record to consider is the trial record, not the summary judgment record. **See** Pa.R.Civ.P. 230.1(a)(1); and **id.**, (a)(2) (stating that the court "**shall** consider only evidence which was introduced by the plaintiff") (emphasis added).
>
> Indeed, this Court has specifically rejected the argument that the summary judgment evidentiary record is relevant in evaluating a nonsuit. **See Barnes v. Alcoa, Inc.**, 145 A.3d 730, 737-738 (Pa. Super. 2016) ("[a]ppellants rely upon evidence presented at the summary judgment stage …. We are prohibited from considering evidence not presented at trial when considering whether the trial court properly granted [a] nonsuit motion. Thus, [a]ppellants' reliance upon this evidence is misplaced.").

Atlantic's Brief at 42-43.

After careful review, we agree with Atlantic's arguments, which are supported by the record and the law. The trial court properly concluded that the evidence presented at trial satisfied each of the aforementioned **McDonald** elements for statutory employer immunity. **See** Trial Court Opinion, 12/16/21, at 11 ("**After the end of** [**Appellant's**] **case-in-chief**, the record contained uncontested evidence that [Appellant] met all five elements of the **McDonald** test." (emphasis added)). We discern no error or abuse of the trial court's discretion in concluding Ms. Bolden-Johnson had a "valid claim" against Appellant. **See Burlington Coat Factory**, **supra**; Trial Court Opinion, 12/16/21, at 11-12. Indeed, as Atlantic correctly points out, this Court has emphasized that a party entering into a settlement "**assumes**

- 21 -

**the risk, in an action against the wrongdoer for indemnity, of being able to prove the actionable facts on which his liability depends**….” *Martinique Shoes*, 217 A.2d at 783 (emphasis in original; citation omitted); *see also* Atlantic's Brief at 21, and *id.* at 22 (arguing, “contrary to [Appellant's] claim, contractual indemnification language is insufficient standing alone to permit recovery after a settlement”). The trial court did not improperly consider all evidence of record, including Appellant's admissions in its summary judgment motion. *See Cogley*, *supra* (judicial admissions are binding).

The record also refutes Appellant's claim that the record after the non-jury trial, contained “no new evidence” for the court to consider in ruling on the nonsuit motion and issue of statutory employer liability. Appellant's Brief at 55; *see also* Trial Court Opinion, 12/16/21, at 3-4, 11-13, *supra* (detailing new evidence presented at trial); Atlantic's Brief at 46-49 (same). Accordingly, the trial court properly entered nonsuit against Appellant on its contractual immunity claim. *See* Pa.R.C.P. 230.1(a)(1); *Fox Park*, 641 A.2d at 317, 318 (upholding trial court's denial of appellant/alleged indemnitee's motion for indemnification made after a settlement payment, where appellant “was never liable to anyone in the first place.”). Appellant's first and second issues do not merit relief.

In its final issue, Appellant asks us to reverse the trial court's entry of nonsuit, as it “will discourage settlements,” in contravention of Pennsylvania's

public policy of encouraging settlements. Appellant's Brief at 64 (bold and some capitalization omitted) (citing **Nationwide Ins. Co. v. Schneider**, 960 A.2d 442, 449 (Pa. 2008) ("it remains a strong, prevailing public policy in Pennsylvania to encourage voluntary settlements.")). Appellant complains the trial court's ruling,

> will significantly discourage future settlements where indemnification agreements are at issue. Any defendant or insurer looking at the result in this case would have to conclude that the safest and most fiscally responsible thing to do is to **not** settle with plaintiff and, instead, take its defenses to trial. … If the defendant's defenses are rejected at trial, the defendant would have established there was a valid claim against it that had matured into a judgment, and it could rest easily knowing that it could pursue its contractual indemnification claim against its subcontractor.

Appellant's Brief at 66 (emphasis in original).[7]

> Atlantic counters:

> [Appellant's] argument misapprehends numerous key facts and suggests that the onerous situation created **by** [Appellant] should result in sympathy **for** [Appellant]. … [The trial court's] denial of summary judgment did not "reject" [Appellant's] statutory employer immunity or "establish" the validity of Plaintiff's claims in any way. **It simply found that a trial was necessary.** Then, more than eighteen months later, the nonsuit was granted based on extensive new evidence that [Appellant] itself presented at trial. There was nothing improper about this, and there is no basis for [Appellant's] suggestion that the nonsuit could discourage settlements.

Atlantic's Brief at 54 (emphasis in original).

---

[7] Again, the trial court did not address this claim in its Pa.R.A.P. 1925(a) opinion. **But see** Appellant's Rule 1925(b) Statement, 11/8/21, ¶ 15 (preserving public policy claim).

Again, we are persuaded by Atlantic's arguments, and our review reveals no authority to support Appellant's claim that the trial court's ruling contravenes Pennsylvania's public policy of encouraging settlements. ***See***, ***e.g.***, ***Martinique Shoes***, 217 A.2d at 783 (a settling party "assumes the risk" of possible unfavorable implications in a subsequent "action against the wrongdoer for indemnity"); ***see also*** Trial Court Opinion, 12/16/21, at 13 (stating Appellant "misapprehends the import" of the court's denial of Appellant's motion for summary judgment). Appellant's third issue does not merit relief.

Based on the foregoing, the trial court did not err or abuse its discretion in entering nonsuit against Appellant. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2022

- 24 -